[No. 3804. Decided March 30, 1901.]

DAVID MATHESON *et ux., Appellants,* v. WILLIAM WARD *et al., Respondents.*

WATERS AND WATER COURSES — DIVERSION — EFFECT OF ACQUIES-
CENCE.

The acquiescence by riparian proprietors for a period of thirty years in the diversion of a stream from its natural channel into a new one is binding to such an extent as to prevent their lawfullly returning the stream to its old channel, when new rights have accrued by reason of such long continued divergence.

COST BILL — WHEN MAY BE STRICKEN.

Where the party in whose favor judgment is rendered neglects for more than ten days to file his cost bill with the clerk, as required by Bal. Code, § 5173, the adverse party is entitled to have the cost bill stricken as to all items except such fees ·as appear upon the face of the papers.

VENUE — WHERE FINDINGS MAY BE SIGNED.

Although it is necessary under the statutes, that the trial of an action must be had in the proper county, yet there is no law requiring the judge who tried the case to sign the findings and judgment in the county where it is pending.

Appeal from Superior Court, Clallam County.—Hon. OLIVER V. LINN, Judge. Affirmed.

*George C. Hatch,* for appellants.

*Allen Weir* and *W. E. Humphrey,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—The Dungeness river rises in the Olympic mountains, and flows in a northerly course through Clallam county into the Straits of Fuca. It is a rapid stream, and at time of freshets, which occur semi-annually, frequently overflows its banks, and floods the surrounding low land, and does great damage to cultivated lands. Especially is this true near its mouth. About four miles south of its mouth, at a place known as "Potter's crossing," the river forks into three branches. The east branch is known as "Hurd's creek channel," the central or main branch being known as the "east channel," and the one further west as the "west channel." Neither plaintiffs nor defendants own any of the land at these forks, nor within one or two miles thereof, but all own lands further to the north, which are subject to the overflow at times of high water; plaintiffs' land being some two miles from these forks, and along Hurd's creek channel, east of the main channel, and defendants' lands being about the same distance north, and on the west side of the main channel. Some time prior to the year 1865 one Le Balister built a wing dam somewhere near Potter's crossing, and about opposite the head of Hurd's creek channel, which diverted all the flow of water into the east channel and Hurd's creek channel, so

that for a period of thirty years no water ran into the west channel, except probably at times some seepage; and this west channel thereby became obliterated as an active channel, and near its head trees and brush grew in the same, and banks were formed, so that no water ran out of the river into this channel excepting during very high water. In 1895 the owners of lands on the east side of said river and on Hurd's creek channel some two miles north of Potter's crossing, without the knowledge of those living on the west side, excavated at or near said crossing, which is the place at which the river forks as aforesaid, a channel of from ten to forty feet wide, from two to four feet deep, and forty to one hundred and twenty feet in length, and placed a wing dam in the main channel so that thereafter almost the entire stream was thereby diverted from Hurd's creek channel and the east channel into the west channel. At times of high water the lowlands, including the lands of defendants, were flooded and badly damaged thereby. In January, 1900, defendants, who own lands along and near this west channel to the north, attempted to clear out the drift wood and debris at and near the forks as aforesaid, in the east channel, and to close up the west channel, and thereby turn the water again into Hurd's creek and the east channels. This action was brought by plaintiffs to restrain defendants from so doing. After a trial by the lower court, and findings in favor of the defendants, and judgment dismissing the complaint and giving defendants affirmative relief, plaintiffs appealed.

It is admitted in the cause that the Hurd's creek channel and the east channel are natural channels, in which the waters of the Dungeness river have been accustomed to flow from time immemorial. It is also admitted that from 1865 down to 1895 no water flowed in the west channel ex-

cept a seepage, and at extreme high water when the Dungeness river overflows its banks. It is also admitted that in 1895 an excavation was made by the persons living on Hurd's creek on the west side, so that at the time of the trial the principal flow was in the west channel. As stated by appellants, the whole cause turns on the question whether the west channel was an artificial channel or not. Much evidence is quoted by appellants in their brief to the effect that many years ago there was a natural channel in the west, and that one Le Balister, in 1865, closed up this channel by a dam, and that thereafter it filled up by sediment and brush, and no water ran through it at low and ordinary high water. Conceding this to be true, viz., that prior to 1865 it was a natural channel, although the evidence is conflicting upon this point, the admissions already stated make the determination of the question one of law for the court, rather than one of fact. Even if the west channel was a natural channel prior to 1865 and was then dammed up, and the water diverted to the east and Hurd's creek channels, where it was confined for thirty years, and this flow was acquiesced in by the riparian owners and others along the channels of said river, this would make the east and Hurd's creek the natural channels; and defendants and others purchasing and improving lands along the old channel, and relying upon the flow continuing in the channels thereby formed, could not now have their lands damaged by reason of the water being turned back by artificial means after that lapse of time. After the lapse of thirty years the channels known as the "east" and "Hurd's creek" became natural channels, and the attempt of riparian or other owners to change the flow at this late day to the injury of persons on the old channel would be unlawful. According to the evidence it is probably true that in the year 1865 one Le Balister, by means

of a dam or embankment, changed the flow of water out of the west channel. Conceding it to be so, the acquiescence by plaintiffs and their grantors and all riparian owners below the point of divergence for a period of thirty years has now lost them the right to change the flow from the new into the old channel. 28 Am. & Eng. Enc. Law, 964; *Woodbury v. Short,* 17 Vt. 387 (44 Am. Dec. 344); *Ford v. Whitlock,* 27 Vt. 265; Angell, Water Courses (7th ed.), § 108*h.*

Gould on Waters (2d ed.), at § 159, says:

"When a stream flowing through a person's land is diverted into a new channel, either artificially or by sudden flood, affecting the rights of other riparian proprietors favorably, and the owner acquiesces in the new state of the stream for so long a time that new rights accrue, or may be presumed to have accrued, such acquiescence is binding, like a public dedication, and the stream cannot be lawfully returned to its former channel."

No doubt the plaintiffs, within a reasonable time after such diversion, could have removed the obstruction placed across the west channel by Le Balister; but when, after thirty years, they undertook to do so by virtually making a new channel, they were invading the rights of those below who had purchased lands and improved the same. Hurd's creek and east channels having become the natural channels defendants had the right to the natural flow through the same. Likewise, if the west channel had been opened without consent of the lower owners by artificial means, and these lower owners thereby suffered injury to their lands which were under cultivation, by reason of the flood which would not naturally flow over their lands, they might replace the embankments, and restrain plaintiffs from interfering with the same. Angell, Water Courses (7th ed.), §§ 333, 334, 428, 429; Gould, Waters, § 413; *Mathewson v. Hoffman,* 77 Mich. 420 (43 N. W. 883, 6

L. R. A. 349) ; *Hartford Sorghum Mfg. Co. v. Brush,* 43 Vt. 528.

We have carefully examined the record, and are convinced that the findings of the lower court are correct, and in accordance with the weight of the evidence.

Judgment in this case was entered on May 29, 1900, and on June 16th a cost bill was filed. Plaintiffs thereupon moved to strike the said cost bill, because the same was not filed within time, which motion was denied. This was error. The Code provides (§ 5173, Bal. Code) that this cost bill "shall be filed with the clerk of the court within ten days after the judgment." Counsel for defendants seek to overcome this provision of the statute by filing an affidavit which states, in substance, that counsel relied upon one of the defendants to furnish him the items therefor, and that defendant neglected so to do until the time had elapsed. Even if this showing were permissible, it is not sufficient. *Dow v. Ross,* 90 Cal. 562 (27 Pac. 409). The court should have sustained the motion as to all the items thereof except clerk's fees and all fees appearing on the face of the papers, which amounted to $17.

The appellants also insist that the judge who tried this case, being called from another county, had no authority to sign the findings and judgment outside of Clallam county. There is no merit in this contention. While it is true that the trial must be had in the proper county (*State ex rel. Clark v. Neal,* 19 Wash. 642, 54 Pac. 31),

"It was not the signing but filing of the findings and order for judgment that determined the action. We are quite confident that there is no law that requires a judge to deliberate upon a case or to prepare his findings and order for judgment in the county in which the cause is pending." *Comstock Q. M. Co. v. Superior Court,* 57 Cal. 625.

The decree will be modified to the extent of striking out and in all other respects the decree is affirmed, with costs to the respondents.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.