[No. 12130.   Department Two.   May 8, 1915.]

HERMAN DAHLGREN et al., Respondents, v. CHICAGO,
MILWAUKEE & PUGET SOUND RAILWAY COMPANY,
Appellant.[1]

WATERS AND WATER COURSES—ACTION FOR OBSTRUCTION—ISSUES
AND PROOF—INSTRUCTIONS.  In an action for damages for the alleged
obstruction of the natural flow of "surface" waters, an instruction
on "surface and other waters" is not erroneous as enlarging the
scope of the issues, where it is apparent from the complaint that
"surface waters" was used to designate waters coming from a large
area and flowing through a natural water course which crossed
their premises; since a particular statement controls a general term,
in case of conflict.

TRIAL—ISSUES AND PROOF—INSTRUCTIONS.  Although the pleadings
might be obscure, the court could properly base instructions on evi-
dence admitted without objection, which was broader than the
pleadings.

WATERS AND WATER COURSES — OBSTRUCTION — NEGLIGENCE — IN-
STRUCTIONS.  An obstruction of a water course by building a rail-
road embankment so as to prevent the natural flow of the waters in
their accustomed channel, and thereby overflow plaintiffs' premises,
is wrongful as to plaintiffs, regardless of negligence; and hence an
instruction should eliminate negligence in the construction as an
element of the wrong complained of.

SAME—INSTRUCTIONS.  In an action for overflowing lands by ob-
structing a water course, an instruction that "the drain provided by
the defendant to take care of the waters of the stream . . . must
have been sufficient to take care of and dispose of the waters flowing
down the stream at times of any ordinary freshet, but need not have
been sufficient to provide against an unprecedented flow of high
water," is not an invasion of the province of the jury as a determina-
tion of a question of fact, but merely states the rule as to the
measure of duty the law imposed upon the defendants with regard
to the drain.

TRIAL—INSTRUCTIONS—FAILURE TO COVER EVIDENCE—REMEDY.  The
remedy for instructions not sufficiently full to cover the entire evi-
dence on a particular subject is to ask for further instructions, not
to object to the instructions given.

CONSTITUTIONAL LAW—DUE PROCESS—CHANGE OF STREET GRADE—
DAMAGING PRIVATE PROPERTY.  An injury to an abutting property

[1]Reported in 148 Pac. 567.

caused by a change in the grade of a highway, made necessary to carry the highway across the tracks of a railroad, is a taking and damaging of property within the meaning of the constitutional provision (Const., art. 1, § 16) relating to the taking and damaging of private property for a public use, even though the change is confined to the highway and does not extend to the property damaged.

WATERS AND WATER COURSES — OBSTRUCTION — CHANGE OF STREET GRADE—LIABILITY OF RAILROAD. A railroad company cannot escape liability for obstructing a water course by changing the grade of a street in the construction of an approach to the railway crossing of the street on the theory that it was a duty devolving upon the municipality, which service the railway company was employed to perform as a contractor and agent of the town, when it appears that the change in grade, as a part of the embankment and approach, was necessary to enable the railway to cross the street at a proper grade, that the town entered into no contract for the construction of the approach, nor furnished plans and specifications therefor, but had required in its franchise to the railway that suitable crossings and approaches should be maintained without expense to the town.

SAME — CHANGE OF ESTABLISHED GRADE — LIABILITY OF RAILROAD. In an action for flooding lands by the obstruction of a water course, a railway company, which changed the street grade by constructing an approach to its tracks, thereby raising the street above the grade as established, and flooding the lands, cannot escape liability for consequential damages on the theory that an original grade in use was lower than the established grade and that the grade put in by the railway at the requirement of the town was in the nature of an original or initial grade, where it was higher than and as variant from the established grade as the original grade.

SAME. An approach to a railway embankment constructed in a town street so as to afford a crossing at grade, under the authority of the town, would not exempt the railway company from liability for injuries caused to private property, where the franchise itself, under which the authority was exercised, provided that the company should be liable for all loss, damage and expense arising out of any injury to the property of any person caused by the construction of such railway.

MUNICIPAL CORPORATIONS—STREETS—CHANGE OF GRADE. While the owner of property in a municipality whose streets have been dedicated to a public use cannot complain of an initial or original grade, since it is conclusively presumed that it was intended by the dedicator that the streets should be made suitable for public convenience, grades made necessary by the building of commercial railways cannot be said to fall within the grant, such use being adverse to, and not within, the contemplated use.

WATERS AND WATER COURSES—OBSTRUCTION—DAMAGES—INSTRUC-
TIONS. In an action for the wrongful obstruction of the natural flow
of waters, instructions on the measure of damages are not objec-
tionable as authorizing the jury to assess damages on a double basis,
where on one cause of action recovery was allowed for the obstruc-
tion of the natural channel of a stream on one side of the plain-
tiffs' premises, and for the loss of use of the premises for two years
next preceding the action, and in the other cause of action recovery
was allowed for permanent injuries caused by waters being cast on
plaintiffs' property by reason of elevation of the street grade on
another side  of the premises, and for loss of the use of the prop-
erty for two years next preceding the action.

TRIAL—INSTRUCTIONS—REFUSAL OF REQUESTS. The refusal of re-
quested instructions based on defendant's theory of the case was
proper, when not in conformity with the correct theory adopted by
the trial court.

APPEAL AND ERROR—VERDICT—CONCLUSIVENESS—AMOUNT OF DAM-
AGES. A verdict awarding damages will not be interfered with as
excessive, when the question of amount was wholly within the pro-
vince of the jury, and there was evidence to support the award.

Appeal from a judgment of the superior court for Sno-
homish county, Bell, J., entered February 9, 1914, upon the
verdict of a jury rendered in favor of the plaintiffs, in an
action in tort. Affirmed.

*F. M. Dudley, G. W. Korte,* and *C. H. Hanford,* for ap-
pellant.

*C. H. Graves,* for respondents.

FULLERTON, J.—The respondents, plaintiffs below, brought
this action against the appellant to recover in damages for
the alleged wrongful obstruction of a water course, causing
injury to their real property. In their complaint the re-
spondents alleged that they were the owners of certain de-
scribed real property in the city of Monroe, abutting upon
Ann street therein, which they used for a home, the same
having thereon a valuable two-story residence, with the nec-
essary outbuildings, fruit and ornamental trees, garden plot,
flowers and lawn, the same being a highly improved resi-
dence property.

"That during the year 1910 the defendant, its officers and agents, servants and employees, built and constructed a large fill or embankment as a road-bed for their railway, paralleling the south line of plaintiffs' said property, and upon a line some 175 feet to the south thereof. That said embankment is constructed of solid earth, and is from 12 to 15 feet in height and extends the full length of plaintiff's property in an easterly and westerly direction, and intersects said Ann street at right angles and extends either way therefrom for a considerable distance.

"That said embankment as constructed by said railway company completely cuts off and obstructs the natural flow and drainage of all surface waters coming from plaintiffs' premises and from the vicinity and from a large area to the north thereof. That prior to the building of said embankment, all of said surface waters flowed naturally and without hindrance in a southerly direction over and across the area now used by defendant's road-bed, through natural water courses and channels which crossed plaintiffs' premises and the adjacent premises; and that defendant has so carelessly and negligently constructed its said embankment as aforesaid that said natural water courses and channels are completely filled up, and the natural flow of all the surface waters in the vicinity completely obstructed, and that defendant has made no suitable or proper provisions to take care of the same, causing said waters to back up and overflow upon plaintiff's premises, which would not otherwise come thereon, so that at times the whole thereof is flooded to a depth of several feet, resulting in great injury and damage to plaintiff's residence, buildings and other improvements, further causing plaintiffs' lands continuously since the building of said fill as aforesaid to be and remain wet and covered more or less with water at all times, rendering the same unfit and unsafe for residence or other purposes; and whereby plaintiffs' said residence is greatly endangered and rendered unsafe and unhealthful, and the value of their property greatly impaired and lessened."

For a second cause of action, it was alleged:

"That during the year 1912, the defendant, its officers, agents, servants and employees, constructed and built an approach on said Ann street in the city of Monroe, in order

to meet the grade of the aforesaid embankment at its crossing of said street, and that said approach was made by filling in said street with earth to the full width thereof, and raising the established grade thereof from a point at or about twenty feet north of the south line of plaintiffs' property and extending south some 175 feet to the Ann street crossing. That said fill as constructed is upon a five per cent grade, more or less, between said points, and was made by the defendant by consent and permission of the city council and mayor of said city of Monroe, but upon the express condition that said railway company would be responsible for any and all damages occasioned thereby to adjoining property owners or others.

"That said fill and change of grade completely stops and obstructs the natural flow of all surface waters along and from said street, and for a considerable distance to the north thereof, also causing all surface waters from said fill to the south of plaintiffs' property to be brought down thereon, and collecting all of said water from both directions at a point in the street immediately in front of plaintiffs' property, and discharging the same over and upon the same, which would not otherwise flow thereon, making the ground wet and unfit for residence purposes at all times, and greatly injuring plaintiffs in the use and enjoyment thereof; and the value of their property is greatly impaired and depreciated."

The answer put in issue the traversable allegations of the complaint, and for a separate defense, set up the following:

"That by an ordinance, numbered 91, entitled 'An ordinance granting to the Chicago, Milwaukee & Puget Sound Railway Company, its successors and assigns, the right, privilege and authority to locate, lay down, construct, maintain and operate railway tracks upon, over and across certain streets, avenues and highways in the city of Monroe, county of Snohomish and state of Washington, together with all telegraph and telephone lines and appurtenances necessary or convenient to the operation of said railway tracks,' which ordinance was passed September 28, 1910, the said town of Monroe granted unto this defendant the right, privilege, authority and franchise to locate, construct and maintain a standard gauge railway, consisting of one or more tracks, and such telegraph and telephone lines and ap-

purtenances as might be necessary or convenient for the operation and maintenance of said railway, and to operate said railway by electricity, steam or other mechanical power, upon the conditions prescribed in said ordinance, upon, along and across certain streets, avenues, alleys and public places in said town, including among others, the following, to wit:

" 'All that portion of Ann street, in said town, lying between the south line of Lot 9 and the north line of Lot 10, in Block 1, in Tye City Plat, respectively, produced westerly across said Ann street.' "

It was by said ordinance, among other things, provided as follows:

" 'Section II.   There shall be maintained without expense to the town of Monroe at all points where said railway crosses or occupies any public streets, avenue, alley, road or public place in the town of Monroe, by virtue of this franchise, suitable crossings and approaches, the entire width or distance of such occupancy of any and all such streets, avenues, alleys, roads and public places, for all wagons and other vehicles, and for pedestrians, to conveniently accommodate all travel on, along and across said railway.

" 'Section III.   During the construction and maintenance of said railway the grantee shall take all proper precautions to guard against danger or accident to any person, and it shall be liable to the town of Monroe for all loss, damage and expense to it arising out of any injury to the person or property of any person or corporation caused by the construction or maintenance of said railway, and shall save the said town harmless during the entire term of this franchise from any and all such loss, damage and expense; and shall lay and maintain the said railway in such manner that the same will not interfere with the use of said streets, avenues, alleys or public places to any greater extent than is reasonably necessary for the exercise and enjoyment of the rights herein granted.'

"That after the passage of said ordinance this defendant duly accepted the same, and thereafter constructed its railway over and across said Ann street upon a fill or embankment, and constructed a crossing over said track at said Ann street, with approaches thereto upon each side of said railway.   That thereafter the said town of Monroe com-

plained unto this defendant that the grade of its approaches was too steep, and requested this defendant to extend said approaches so as to lessen the grade thereof. That in the year 1912 this defendant, pursuant to said request, did extend said approaches, beginning the northerly approach (being the approach referred to in the second paragraph of the second cause of action in said complaint alleged) at a point at grade at the south line of plaintiffs' property produced across Ann street, and extending thence southerly approximately 175 feet to the railway tracks of this defendant. That said grade as constructed is between four and five per cent between said points; and that it was so constructed by this defendant at the instance and request of the said town of Monroe, and solely because of said request. That in so constructing said approach this defendant acted as the agent of said town of Monroe in making said grade, and that said town is a proper and necessary party defendant herein."

To this affirmative defense, a demurrer was interposed, which the court sustained. A trial was thereupon had before the court and a jury on the remaining issues, resulting in a verdict and judgment in favor of the plaintiffs in the sum of $350 on their first cause of action, and $150 on the second.

The evidence tended to show the following: The respondents own and occupy certain lots in the city of Monroe, abutting upon the west side of Ann street, a street extending north and south through the city, and which at its north end opens into a county road. The street had been improved by the city authorities by graveling the surface thereof, and by the construction of sidewalks and curbs along its margins, and was one of the principal thoroughfares of the city. The property of the respondents was well improved, and had thereon a good dwelling house, outbuildings, trees, shrubbery, flower beds, a vegetable garden, and a chicken yard. The ground was bottom land sloping slightly to the southwest. West and northwest of the property is a hill, which for a considerable distance from the property gathers drainage waters which flow in a natural channel or gully at the base of the hill, making a flowing stream throughout the year

except in the driest months. The gully crosses the west end of the respondents' premises and empties into a creek some distance to the southeast thereof, known as Woods creek.

In the fall of 1910, and winter of 1910-1911, the appellant constructed a branch line of its railroad through the city of Monroe. The road ran parallel to the south line of the respondents' premises and about one hundred and seventy-five feet distant therefrom, crossing Ann street at a right angle. For its roadbed, the railway constructed an embankment some twelve feet high. The embankment crossed the gully before mentioned, filling up the same and destroying it as a drainage channel. In lieu thereof the railway company inserted a twelve-inch tile pipe, leading through the embankment, placing it, however, some two feet higher than the bottom of the original gully. The land of the respondents, according to the testimony in their behalf, was not drained as effectively as it was prior to the construction of the embankment, the result being that water stood for the greater part of the year around the intake of the tile pipe, percolating back upon the property of the respondents causing it to become and remain wet and soggy, thereby destroying the trees and shrubbery growing thereon, and rendering it unfit for garden purposes.

To make a crossing over its tracks in Ann street, the appellant was required to, and did, construct a slope from the top of its embankment northward down to the existing surface of Ann street the full width of the street, the toe or end of the slope extending beyond the south line of the respondents' property. The company also constructed westerly and southwesterly of the respondents' property another embankment, extending from its principal embankment to the foot of the hill before described as being on the west and northwest of the property, on which they constructed a wye; the effect of the several embankments being to form a basin surrounding in part the respondents' property. It also appeared from the testimony that the country surrounding this district

was subject to periodical freshets, which prior to the building of the railway embankment were wont to pass away in other directions, but which subsequent thereto were caught by the embankment and caused to flow over the respondents' land to the outlet furnished by the twelve-inch tile pipe, depositing sand, gravel and other debris thereon. It was in evidence also that the pipe was insufficient in size to take care of the water as fast as it accumulated during such freshets, and in one such freshet, occurring in January, 1912, the water backed up and overflowed the greater part of the respondents' premises.

The errors assigned and discussed in the brief which relate to the first cause of action are suggested by the instructions of the court given on that branch of the case; those complained of being the following:

"The gist of this action is contained in paragraph 5 of the complaint, and consists of an allegation that the defendant wrongfully obstructed by means of the construction of its roadbed across and therein a natural water course and channel, which crossed the plaintiffs' lands and adjacent lands, and, by such construction of its roadbed, stopped and impeded and interfered with the natural flow of the surface and other waters which gathered in such channel or bed, causing the same to flood the premises of the plaintiffs, to their damage and injury.

"In this connection you are instructed that if you shall believe from a fair preponderance of the evidence, as that term is hereinafter defined to you, that the following facts are established: That at the time of the construction of the embankment which constitutes its roadbed by the defendant there was a natural creek or water course crossing the property of the plaintiff and extending down to and beyond the point at which the embankment or roadbed was builded, which channel was filled up or obstructed by such embankment or roadbed, and that the natural flow of waters through the creek or water course was impeded and obstructed, and that the defendant did not make some suitable and adequate provision for draining away the water flowing through such creek or water course, including the water which could be reasonably

anticipated to flow through such bed or course during times of ordinary high water, and that, by reason of such obstruction, or such failure to provide adequate and proper drainage or outlet, the waters naturally flowing through such bed or creek caused to back upon or overflow or seep through intervening lands into the soil of plaintiffs' lands, to the damage and injury of the plaintiffs, then your verdict shall be for the plaintiffs, in such sum as you shall fix.

"In this connection you are instructed that any drain provided by the defendant to take care of the waters of the stream, if you shall find there was one, as above, must have been sufficient to take care of and dispose of the waters flowing down the stream at times of any ordinary freshet, but need not have been sufficient to provide against any unprecedented flow of high water.

"You are further instructed that if you shall find in favor of the plaintiffs upon the first cause of action, the measure of their recovery shall be such sum as you shall deem to be the difference, if any, between the fair cash market value of their property before the obstruction of the stream and its present fair cash market value in view of the conditions which now exist, together with such sum as you shall find, from a fair preponderance of the evidence, fairly and reasonably compensates the plaintiffs for any loss they may have sustained by being interfered with in their use of the premises in question during the two years preceding the commencement of their action on the 5th day of November, 1913, and no longer; and in no case can your verdict on the first cause of action exceed in amount the sum of $1,500.

"Difference in fair cash market value, as used in these instructions, means, of course, reduction, for unless the fair cash market value was reduced, the plaintiffs are not damaged in that respect. Further, any sum allowed the plaintiffs by you on account of this cause of action must be found by you from a fair preponderance of the evidence to have been the direct and proximate result of the wrong complained of in the first cause of action, which is the obstructing of the stream."

It is first objected to these instructions that they enlarge the scope of the issues, in that the complaint relates only to "surface waters," whereas the instruction refers to "surface

and other waters," thus placing upon the appellant the duty of taking care of all of the waters flowing down the water course or gully which passed the respondents' premises, whether the same be surface waters or waters arising from sources that cannot be called such; a duty with the performance of which it was not charged in the complaint. But we think the appellant places a too narrow construction upon the allegations of the complaint. While the term "surface waters" is used to describe the waters flowing down the channel, yet we think it apparent that the respondents meant to designate thereby all of the waters that were wont to flow by nature down such channel, and that the pleading would be ordinarily so understood. Surface waters, in a technical sense, are waters of a casual or vagrant character having a temporary source, and which diffuse themselves over the surface of the ground, following no definite course or defined channel, while here the waters are described as coming from the vicinity of a large area to the north of the respondents' premises and flowing naturally and without hindrance through a natural water course and channel which crossed such premises. The description is that of a natural and regular water course, rather than that of a mere casual overflow. If in a pleading a given thing be described generally, as by a name, and afterwards particularly, as by a statement of its conditions, purposes or functions, and there be a conflict between the two, the particular will control the general.

But if the pleadings be obscure on the particular question, the testimony introduced thereunder without objection was not so. The testimony showed a stream flowing in a well defined channel, continuous for some nine months of the year, and that it was this particular channel that the appellant closed to the injury of the respondents. Where evidence is introduced without objection, the court may properly base its instructions thereon, even though the evidence be broader than the pleadings.

A second contention is that the instruction erroneously eliminated negligence as an element of the wrong of which complaint is made. But if it be meant by this that it was necessary for the respondents to show, in addition to the fact that the construction of the embankment caused them an injury, that the work of construction was performed in a negligent manner, we cannot agree with the contention. It is doubtless true, as the appellant argues, that it had a lawful right to construct an embankment for the use of its railway, but it does not follow that it had a lawful right to construct it in such a manner as to cause injury to the property of the respondents. It is not a case of *damnum absque injuria*. On the contrary, if the embankment impeded a natural water course, and left no sufficient vent for the escape of the water, and the water was caused thereby to overflow the premises of the respondents to their injury, the construction was negligent and wrongful as to the respondents, no matter how carefully the work of construction was performed.

It is said, further, that the instruction invades the province of the jury, because the court stated therein that "the drain provided by the defendant [appellant] to take care of the waters of the stream . . . must have been sufficient to take care of and dispose of the waters flowing down the stream at times of any ordinary freshet, but need not have been sufficient to provide against any unprecedented flow of high water." But clearly the court here determined no question of fact. It but stated the measure of duty the law imposed upon the appellant with regard to the drain. And we think it correctly stated the rule. If it has fault at all, the fault lies in the fact that it is not sufficiently full to cover the entire evidence on the particular subject. But the remedy for this defect is to ask for further instructions, not to object to the instruction given.

With reference to the second cause of action, the court gave to the jury the following instruction:

"You are instructed that in reference to the second wrong alleged to have been done the plaintiffs by the defendant in the so-called second cause of action, the gist of it appears in paragraph 2 of said second cause of action in the amended complaint, and consists of the allegation that the defendant constructed an approach to Ann street for the full width thereof by filling in said street with earth, and thereby raising the formerly established grade thereof, and thereby causing surface waters to flow upon the lands of plaintiffs which had not formerly flowed upon such lands to the plaintiff's damage and injury. In this connection you are instructed that if you shall believe the following facts to be true, from a fair preponderance of the evidence in this case—that is, that prior to and at the time the defendant built the approach referred to on north Ann street that said street had an established grade fixed by the action of the town of Monroe through its Town Council, and that by reason of the raising of said street by said approach and the consequent change of the grade thereof, waters were caused to flow upon or across the lands of the plaintiffs which had not previously by the originally established grade flowed upon said lands, then and in that case the plaintiffs are entitled to recover a verdict at your hands in the second cause of action. Unless you find from a fair preponderance of the evidence the foregoing facts, your verdict should be for the defendant upon the second cause of action."

There was evidence in the record tending to show that the approach mentioned in the instruction was authorized by the town of Monroe; that is to say, the railway company, in part consideration of a franchise for its railway through the town of Monroe, agreed with the town authorities to construct suitable crossings over its railway tracks for vehicles and pedestrians at all places where its tracks passed over the existing streets of the town. The evidence also tended to show that the town had, at some time prior to the construction of the railway, established a grade upon Ann street, and had improved the street by graveling the same and by the construction of sidewalks and gutters thereon. It appeared, however, from the testimony of an engineer

called by the respondents, that the surface of the street was not brought by the improvement to the line of the established grade; that its surface was throughout somewhat lower than that required by such grade, and lower by two feet or more where it passed in front of the respondents' property. The instruction of the court last quoted, it will be observed, proceeded on the theory that if there had been an established grade upon Ann street, and that grade had been changed by the construction of the railway and the approaches thereto, the railway company was liable to the respondents for any damage to their property caused thereby. If we have correctly gathered the appellant's contention, it contends that the instruction is erroneous for two reasons, first, because the appellant, in raising the grade of the street, acted as contractor and agent of the municipal government of the town of Monroe, and is exempt from liability to owners of abutting property for consequential damages not attributable to its own negligence; and, second, that the evidence conclusively shows that there was in fact no established grade upon Ann street, and consequently the grades put in by the railway at the requirement of the town are in the nature of original or initial grades for which no liability attaches for consequential damages.

These contentions are, we think, untenable for a number of reasons. It is held by almost universal authority that an injury to an abutting property caused by a change in the grade of a highway, made necessary to carry the highway across the tracks of a railroad constructed thereover, is a taking and damaging of property within the meaning of a constitutional provision relating to the taking and damaging of private property for a public use, even though the change is confined to the highway and does not extend to the property damaged. Hence, in this case, if it be the fact that the construction of this approach damaged the respondents' property, either the town of Monroe or the railway company, individually, or both jointly, are liable therefor. The appel-

lant, to exempt itself from liability, contends for the theory that the construction of this approach was a duty devolving upon the city; that the city employed it to perform the service as a contractor and agent of the city; and that it is in consequence responsible only for damages caused by its negligent performance of the work, not for damages caused by the change of grade, defect in the plans, or other causes inherent in the nature of the work. But the facts are opposed to this theory. The change in the grade, the embankment and the approach were necessary to enable the appellant to cross the street with its railway at a proper grade, and were made wholly and solely for its benefit. The town entered into no contract with it for the construction of the approach. It provided it with no plans or specifications. It reserved no right to superintend or direct the work. It simply provided in the ordinance granting the franchise that "there shall be maintained, without expense to the town of Monroe, at all points where said railway crosses any public street . . . in the town of Monroe, suitable crossings and approaches, the entire width of or distance of such occupancy of any and all such streets . . . for all wagons and other vehicles and for pedestrians to conveniently accommodate all travel on, along and across said railway." The appellant was, therefore, at liberty to adopt its own plan for constructing the approach, and to construct it out of such materials and in such manner it pleased, subject only to the limitation that the approach when constructed should be suitable for the purposes for which it was intended and extended to the full width of the street. And if, having this liberty of choice, it adopted a plan and constructed the approach in such a manner as to injure the respondents' property, we can conceive of no reason why it is not primarily liable for such injury.

Again, we think the evidence justified the jury in finding that there was an established grade along the street in question. It was shown by the minutes of the town that the town

council, by resolution, authorized its improvement commit-
tee "to confer with the town engineer concerning the proper
grade of North Ann street," and that subsequently "the
grade of Ann street was established in accordance with the
engineer's recommendation, and according to plans and pro-
files prepared by the town engineer, now on file in the office of
the town clerk, which plans show the elevation of the grade
. . .," and that later on the street was improved in the
manner hereinbefore recited.  True, the street as improved
did not conform in its elevation in all respects to the estab-
lished grade, but clearly this did not render the entire pro-
ceedings nugatory, or subject the street to changes by the
town council, or persons acting under its authority without
liability to property owners injured by such change.  Had
the change in the surface of the existing highway made by
the appellant conformed to the established grade, there would
have been some basis for its contention of nonliability for
injuries caused thereby.  But it did not so conform.  Its so-
called grade began at the existing surface of the street some
two feet or more below the established grade, and ended to a
point an equal distance at least above the same.  It is diffi-
cult to understand why a street constructed by the town is
not an original grade merely because it did not conform in all
respects to the established grade, while a grade constructed
under the authority of the town by a railway company for its
own benefit, equally variant from the established grade, is
an original grade.

But we think the ruling of the trial court may rest on
broader grounds.  The approach to the embankment on
which the railway tracks rest was made necessary because of
the embankment, and is to all intents and purposes a part of
the embankment.  While it was put in under authority of
the city, and is a lawful structure to that extent, such author-
ity did not exempt the railway company from liability for
injuries its construction caused to the private property of
individuals.  The railway company's privileges in this regard

are not different in the town of Monroe than they are on other parts of its right of way. It is subject here as elsewhere to the rule of the constitution that private property shall not be taken or damaged for public use without just compensation to the owner of the property taken or damaged. But the town did not in this instance attempt to exempt the railway company from such liability. On the contrary, it provided in the franchise which it granted the railway company that the railway company should be liable "for all loss, damage and expense to it arising out of any injury to the . . . property of any person . . . caused by the construction or maintenance" of such railway.

Again, we think the rules relating to original grades of streets and changes therein have no applicability to cases such as that here presented. The doctrine that the owner of property in a municipality whose streets have been dedicated to a public use cannot complain of an initial or original establishment of grades along such streets is rested on a grant implied from the act of dedication; it is conclusively presumed that it was intended by the dedicator that the streets should be made suitable for the public conveniences, and that reasonable grades are necessary for such conveniences. Grades made necessary by the building of commercial railways over and along the streets cannot be said to fall within the grant. The building of such railways is adverse to, rather than within, the contemplated use.

It is complained that the instructions given on the measure of damages authorized the jury to assess damages on a double basis, but we do not so read them. The respondents were allowed to recover on the first cause of action for the permanent injury caused their property by reason of the obstruction of the natural channel of the stream, and for the loss they sustained by reason of being interfered with in the use of the premises during the two years next preceding the commencement of the action. On the second cause of action, they were allowed to recover for permanent injuries caused

by waters being cast on their property by reason of the embankment there mentioned, and for such loss of use of the property as such embankment caused for the two years next preceding the commencement of the action. These we think were proper elements on which to base a recovery.

The instructions requested were properly refused. They were based on the appellant's theory of the case, and while appropriate to that view, are inappropriate to the view adopted by the trial court, which we hold to be correct. So with the error assigned upon the ruling sustaining the demurrer to the affirmative defense, it was likewise based upon a theory contrary to that adopted by the trial court and which we hold to be correct.

Lastly, it is said that the damages awarded are excessive. But the question of the amount to be awarded was one so far wholly within the province of the jury that it ought not to be interfered with unless it is plainly without support. We think the evidence in this instance justified the award.

The judgment is affirmed.

MOUNT, MAIN, ELLIS, and CROW, JJ., concur.