[No. 20460. Department One. August 30, 1927.]

## S. GUS JOHNSON et al., *Respondents,* v. SULTAN RAILWAY & TIMBER COMPANY, *Appellant.*[1]

[1] WATERS AND WATERCOURSES (72)—OBSTRUCTION OF FLOW—LIABILITY FOR RESULTING INJURY. A logging company is liable for damages through the flooding of land, regardless of negligence, where the jury found that it conducted its logging operations in such a manner that it should have reasonably anticipated that debris deposited in the stream would cause a jam, the breaking of which during a freshet caused an overflow damaging the land.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered July 16, 1926, upon the verdict of a jury rendered in favor of the plaintiffs, in an action in tort. Affirmed.

*J. A. Coleman* and *Clarence J. Coleman,* for appellant.

*Israel Nelson* and *Hutchinson & Hutchinson,* for respondents.

[1]Reported in 258 Pac. 1033.

MAIN, J.—This action was brought to recover damages to a farm from flooding, claimed to have been caused by acts of the defendant. The cause was tried to the court and a jury and resulted in a verdict in favor of the plaintiff for the sum of $2,500. Motion for judgment notwithstanding the verdict and, in the alternative, for a new trial being made and overruled, judgment was entered upon the verdict, from which the defendant appeals.

The respondents are the owners of a farm or ranch in Snohomish county, consisting of approximately fifty-six acres. The southern boundary of this farm is the Stillaguamish river. The northwestern boundary is Brooks creek, which flows into the Stillaguamish river at the southwest corner of the farm. Brooks creek rises in the foot hills of the mountains to the north and flows in a general southerly direction, until it reaches a point where it touches the lands of the respondents and it then turns off in a southwesterly direction, forming, as stated, the northwest boundary of the farm. In normal times, this stream carries water from the depth of two inches to two feet, as shown by the testimony of one witness. It is a rapidly flowing stream, owing to the topography of the country through which it passes.

The appellant was conducting logging operations on land some miles to the north and through which Brooks creek runs. In logging the land near the creek, the branches of trees, tops and other debris were permitted to remain in the creek. When rain would come or the snow in the mountains melt, the waters in the creek would rise and it would carry this debris down, forming from time to time a jam or small dam. In 1924, about one and one-half miles to the north of the farm owned by the respondents, a large jam had been formed which caused the waters to be impounded

above the same.  On December 10, 1924, there was a heavy and unusual rainfall, accompanied by a Chinook wind, which caused the snow in the mountains to melt rapidly.  The creek rose, water was impounded behind the jam and it, in time, gave way and this water rushed down the creek, broke the dike which the respondents had constructed along the bank of the creek adjoining their farm and flooded the farm, causing the damage for which the action was brought.  There is no question raised as to the amount of the damage awarded by the jury.

[1].  From the facts stated, it appears that the appellant so conducted its logging operations, by depositing debris in the creek, that the waters thereof caused a large jam to form, the breaking of which caused the damage to plaintiff.  The question is whether the forming of this jam in a flowing stream was the resultant act of the logging operations of the appellant and such as it would be liable for.

In *Greenock Corporation v. Caledonian R. Co.*, and *Greenock Corporation v. Glasgow & Southwestern R. Co.*, England, House of Lords, July 23, 1917, (1917) App. Cas. 556, Ann. Cas. 1918A, p. 1103, it was held that the diverting and obstructing the course of a stream, whereby it is rendered incapable of carrying away an extraordinary rainfall, creates a liability where, as a result of such a rainfall, a flood occurs and adjacent property is damaged.  To that case, as it is cited in the Annotated Cases, there is appended a carefully prepared note in which the subject is comprehensively covered and the authorities carefully assembled.  It is there said:

"The duty of a person diverting or obstructing the natural course of a stream is to provide not only for the normal rainfall, but for such floods or freshets as may occasionally occur, whether they are called ordi-

nary or extraordinary, though not for unprecedented floods of which the usual course of nature affords no premonition. Hence, where the evidence in a particular case shows that the flood in question was such a flood as experience indicated must be expected to recur at irregular intervals, a person who so obstructed a natural watercourse that damage was caused by the flood which would not have resulted without the obstruction is liable therefor.''

In support of this declaration there are cited a large number of cases, both from the courts of England and this country. So far as we are informed, the doctrine stated appears to be accepted by the courts without disapproval.

In *Dahlgren v. Chicago, Milwaukee & P. S. R. Co.,* 85 Wash. 395, 148 Pac. 567, the action was brought to recover damages for the wrongful obstruction of a watercourse by the defendant. It was there said:

''A second contention is that the instruction erroneously eliminated negligence as an element of the wrong of which complaint is made. But if it be meant by this that it was necessary for the respondents to show, in addition to the fact that the construction of the embankment caused them an injury, that the work of construction was performed in a negligent manner, we cannot agree with the contention. It is doubtless true, as the appellant argues, that it had a lawful right to construct an embankment for the use of its railway, but it does not follow that it had a lawful right to construct it in such a manner as to cause injury to the property of the respondents. It is not a case of *damnum absque injuria.* On the contrary, if the embankment impeded a natural water course, and left no sufficient vent for the escape of the water, and the water was caused thereby to overflow the premises of the respondents to their injury, the construction was negligent and wrongful as to the respondents, no matter how carefully the work of the construction was performed.''

It thus appears that, under the law, the appellant would be liable if it constructed a dam or jam in a watercourse which, when heavy rains came, gave way and resulted in the flooding of the farm of the appellants. This, regardless of the question whether the logging operations were conducted in a negligent manner. The trial court left it to the jury to say whether the appellant, leaving debris in the stream, should have reasonably anticipated that it would form a jam or dam which would materially affect the flow of the water when heavy rains should come. There is no claim in this case that the flood in question was of such a character as to constitute what, in law, is called an act of God. The principal defense appears to be that the logging operations of the appellant were conducted in the same manner as it is customary for logging operations in the western part of the state to be conducted and that, therefore, there is no liability. Since the law imposes a liability regardless of negligence, any custom that might exist among logging companies in their operations would not be material.

The case of *McEvoy v. Taylor*, 56 Wash. 357, 105 Pac. 851, 26 L. R. A. (N. S.) 222, is upon a different state of facts. There, it was held that the owner of a small tract of land upon which there were springs, forming a small pond from which the water flowed to a lower riparian owner, was not making an improper and unreasonable use of his farm, in pasturing horses and cattle therein and allowing geese to swim in the pond which had the effect to pollute the water. The question of obstructing the flow of a natural stream and causing it to discharge waters upon a lower owner, which otherwise would not have been so discharged, was not there involved.

There is some complaint about the instructions given, but in this regard there was no error. The in-

structions were as favorable to the appellant as the law would justify.

The judgment will be affirmed.

MACKINTOSH, C. J., MITCHELL, FULLERTON, and FRENCH, JJ., concur.