[Nos. 1237-2; 1265-2.    Division Two.    August 14, 1975.]

DARRELL H. WILBER, ET AL, *Respondents*, v. WESTERN PROP-
ERTIES, ET AL, *Appellants*, THE CITY OF TACOMA, ET AL,
*Respondents*.

*James M. Lindsey, Jr.* (of *Merrick, Hofstedt & Lindsey*)
and *Frederick B. Hayes* (of *Rush & Hayes*), for appellants.

*Warren J. Daheim* (of *Gordon, Thomas, Honeywell, Ma-
lanca, Peterson, O'Hern & Johnson*), *William R. Hickman*
(of *Reed, McClure, Moceri & Thonn*), and *William G. Bo-
land, Assistant Attorney General*, for respondents.

PETRIE, J.—In March 1972, Darrell Wilber's two apart-
ment buildings in Tacoma sustained severe flood damage.
He filed a complaint for damages (1) against his downhill
neighbor, Western, alleging it had impeded the natural
course and flow of storm waters by replacing an open ditch

with a narrow pipe, and (2) against the City of Tacoma (also Pierce County and Washington State) alleging that it had improperly designed, constructed, and operated a new, alternate drainage system. In addition, Wilber sought an injunction to abate the nuisances allegedly created by Western' and Tacoma. Western and Tacoma each denied liability for the flood damage and filed cross claims against each other.

At the close of the testimony the trial court dismissed Wilber's complaint for injunction, but a jury assessed damages in the amount of $30,000 against Western. Western appeals the money judgment and Wilber cross-appeals from the order denying injunctive relief. The primary issues presented by these appeals, however, arise because of a series of decisions made by the trial court at the close of plaintiff's case. At that time, the trial court (1) dismissed Tacoma from any liability (Wilber cross-appeals); (2) severed the cross claims from the main action (neither party appeals from that order, and those claims remain at issue in the trial court); and (3) prohibited Western from attempting to establish a defense that it had been told by Tacoma's responsible public authorities (a) the old drainage system had been abandoned and (b) there would be no appreciable flow of water through that system (Western appeals).

We affirm the judgments entered and all of the trial court's subsidiary orders.

Wilber's property is located on the north side of South 88th Street one-half block east of South Tacoma Way. For many years an open ditch, which was reconstructed in the 1930's, provided drainage through Wilber's property and beyond. The ditch begins at Ward's Lake and runs generally *westerly* from that lake. Through the years the ditch has accommodated the overflow from Ward's Lake, a natural holding area. In front of Wilber's property the ditch crosses under 88th Street through a 4-foot by 6-foot box culvert, and until 1969 it cut diagonally across Western's property on the southeast corner of 88th Street and South Tacoma Way. Beyond Western's property it crosses under

South Tacoma Way through another 4-foot by 6-foot box culvert. Waters passing beyond that point flow southwesterly to Seely Lake.

In the mid-1960's, Tacoma designed and constructed a drainage system that provided drainage of Ward's Lake *northerly* through a controlled, raisable weir and then through massive underground pipes into a gravel pit. Water draining through the opening at the weir does not in any way enter the old, westerly drainage system. The outlet which permitted overflow of the lake westerly was left undisturbed. The new system became operable in 1968.

In the course of developing its property in 1969, Western covered the open ditch on its property and substituted a 24-inch pipe as the drainway across its property. On March 6, 1972, after a protracted period of wet weather, the northerly drainage system for Ward's Lake proved to be insufficient to keep the lake from overflowing, and water cascaded through the overflow valve and into the open ditch. When this torrent of water struck Western's 24-inch pipe much of the water backed up and flooded upstream property, including Wilber's apartments.

■ We must first determine the nature of the waters that flowed through the open ditch on March 6 just before they reached Western's pipe. They were obviously flood waters, but in no sense of the word can they be categorized as diffuse surface waters. Indeed, they remained within the confines of the flood channel which was designed to accommodate overflow from Ward's Lake. Accordingly, we must consider that both Wilber and Western were riparian owners along a drainway. *Marshland Flood Control Dist. v. Great Northern Ry.*, 71 Wn.2d 365, 428 P.2d 531 (1967); *Ronkosky v. Tacoma*, 71 Wash. 148, 128 P. 2 (1912). Before reviewing the applicable law, we should dispose of Wilber's cross-appeal from Tacoma's dismissal of all liability.

At the conclusion of Wilber's case, the trial court determined that there was no evidence either that Tacoma had improperly designed and constructed the new system or that, through Tacoma's operation of the new system, it had

entirely abandoned the old system as a viable safety valve for overflow from Ward's Lake. Wilber does not seriously challenge these determinations. However, because they are important to Western's appeal, we have reviewed the evidence and find no support for the theories of faulty design and construction of the new system or abandonment of the old ditch. The trial court did not err by dismissing the complaint against Tacoma.

We turn then to Western's appeal. Western contends that the *jury* should have been allowed to make the factual determinations, after all the testimony had been presented, (1) whether the open ditch system constituted the natural or the artificially contructed drainage system for the area; (2) whether the open ditch became an entirely abandoned method of storm drainage; and (3) whether Western acted reasonably in view of the information imparted to it by Tacoma's officials.

■ (1) Western challenges the naturalness of the ditch only because it is obviously an artificially altered drainway. Land along an altered way may not have become burdened to the same extent as land along the natural way. Whether an artificially altered watercourse has become the "natural" channel because of its antiquity or the longtime acquiescence of riparian owners is a question to be decided by the court as a matter of law. *Matheson v. Ward*, 24 Wash. 407, 64 P. 520 (1901). The same rule applies to an irrigation ditch. *Hollett v. Davis*, 54 Wash. 326, 103 P. 423 (1909). We see no reason why the same rule should not apply to a storm drainway. Thus, because it was uncontroverted that prior to 1969 the ditch had been the drainway for more than 30 years, the trial court was justified in determining that the ditch became the "natural" channel and land along its route acquired legally recognizable burdens and benefits.

(2) We have already determined that Tacoma did not entirely abandon the old ditch as an alternative drainage for overflow from Ward's Lake. Western was not pre-

vented, however, from pursuing the abandonment theory as a defense to Wilber's action. Indeed, testimony presented during Western's defense reaffirmed that Tacoma expected water to flow down the old ditch after the 1968 project had been completed. At the close of the case there was still no evidence that Tacoma had abandoned the old ditch. More importantly, there is no indication that Tacoma's construction and operation of the new project extinguished the burdens and benefits which accrued to the land along the drainway. The issue of abandonment was not and should not have been presented to the jury.

(3) Western insists that it should have been permitted to establish, as part of its defense to Wilber's action—as well as in pursuit of its cross claim against Tacoma—that substitution of the 24-inch pipe was a reasonable use of its property in view of the knowledge imparted by Tacoma's public authorities. The trial court not only prohibited Western from introducing evidence of what Tacoma officials had told Western's representatives, but in addition, instructed the jury:

> A person who so obstructs a natural drain that damage is caused by flooding, which damage would not have resulted without the obstruction, is liable for such damage regardless of negligence.

A lower landowner who would impede or obstruct the flow of water through a natural drainway must provide adequate drainage to accommodate the flow during times of ordinary high water. If the obstruction does not accommodate that amount of flow, it has been negligently and wrongfully constructed as to the upland owner whose land becomes flooded. *Dahlgren v. Milwaukee & P.S. Ry.*, 85 Wash. 395, 148 P. 567 (1915). *See also* 78 Am. Jur. 2d *Waters* § 134, at 583 (1975). Undoubtedly, Western had the right to substitute pipeline drainage for the open ditch on its property, but in doing so it must allow the waters to flow without obstruction in normal conditions and in times of recurrent floods. *Turner v. Smith*, 217 Ark. 441, 231

S.W.2d 110 (1950). Western's duty to Wilber was akin to a duty of strict liability. *Johnson v. Sultan Ry. & Timber Co.,* 145 Wash. 106, 258 P. 1033, 54 A.L.R. 356 (1927). Violation of one's duty to provide adequate drainage *is* unreasonable use of one's property.

Western's land has been burdened with maintaining a drainage system adequate to prevent flooding of Wilber's land except in the case of flooding caused solely by an unprecedentedly high flood. The issues of proximate cause, unprecedented flood, and damages were presented to the jury. Opinions expressed by others as to expectations of future activity within the ditch were simply not relevant to the essential jury issues.

Finally, we return to Wilber's cross-appeal. In denying injunctive relief, the trial court obviously balanced the equities after carefully considering the factors of costs, adequacy of other relief, and likelihood of recurrence in the future in view of present conditions. We find no abuse in the exercise of sound discretion. *Steele v. Queen City Broadcasting Co.,* 54 Wn.2d 402, 341 P.2d 499 (1959).

Judgment affirmed.

ARMSTRONG, C.J., and PEARSON, J., concur.

Petition for rehearing denied September 17, 1975.

Review denied by Supreme Court November 12, 1975.