Argued March 21, affirmed April 25, 1951

BROWN, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE
ESTATE OF WM. F. BROWN, DECEASED, *v.*
GESSLER ET AL.

230 P. 2d 541

*John D. Galey,* of Sweet Home, argued the cause for respondent and cross-appellant. On the briefs were Galey & Galey, of Sweet Home.

*William R. Thomas,* of Lebanon, argued the cause for appellants. On the briefs were Morley & Thomas, of Lebanon.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, WARNER and TOOZE, Justices.

TOOZE, J.

This action was commenced by William F. Brown and Mildred C. Brown, his wife, as plaintiffs, against George Gessler and wife and George Gessler, Jr. and wife, as defendants, to recover damages for injuries to real and personal property, alleged to have resulted from water escaping from an excavation on defendants' land onto the adjoining land of plaintiffs and into the basement of plaintiffs' building located thereon. There was a verdict and judgment in favor of plaintiffs in the sum of $748.67. The defendants appeal, and plaintiffs cross-appeal.

During the pendency of this appeal, William F. Brown, one of the plaintiffs, died, and Mildred C. Brown, as administratrix of the estate of the said William F. Brown, deceased, has been substituted as a party plaintiff.

Prior to the events giving rise to this litigation, plaintiffs were the owners of a tract of land located in the city of Sweet Home, in Linn county, Oregon,

with a frontage along Main street in said city of approximately 66 feet. Main street runs in a general easterly and westerly direction. Long street in said city parallels Main street and is the street next southerly from Main street. Plaintiffs' property extended north and south for the full block between Main and Long streets. At the time of the occurrence hereafter described, there were no storm or other sewers in said city serving the property in question.

On or about November 6, 1946, plaintiffs sold and conveyed to defendants George Gessler and wife a portion of said land, being the northeast corner thereof and comprising approximately 42 feet east and west on Main street with a depth of 125 feet north and south. This left the parties as adjoining landowners on two sides, to-wit: the plaintiffs owned the property on the west and south boundaries of defendants' land. At the time plaintiffs conveyed to defendants, the entire tract of land was unimproved.

At the time of said conveyance, and for many years immediately prior thereto, the defendants George Gessler and wife were, and had been, the owners and operators of a theater in said city. At the time plaintiffs sold this property to defendants, they knew that defendants contemplated the construction thereon of a new theater building.

During the summer of 1947, plaintiffs erected a building known as the "Tik-Tok," in which they operated a restaurant and manufactured and sold ice cream. The building was completed in August, 1947. It fronted on Main street and was immediately west of and abutted defendants' property line. It was of concrete and pumice block construction, had a basement 6½ feet deep, which was approximately 24 feet wide

east and west and 80 feet long north and south, with a concrete floor 5 inches thick.

The east wall of this building stood just inside the east property line of plaintiffs and extended below the ground level approximately 7 feet. The wall sat on a concrete footing 18 inches wide and 18 inches deep. It is contended by defendants that this concrete footing encroached upon their land for several inches, and there is a dispute between the parties as to whether defendants consented to this encroachment. However, there is substantial evidence in the record from which the jury might find that there was an implied, if not an express, consent to the same; therefore, we pass that contention without further comment.

The top of this footing upon which the east wall was erected was approximately the same height as the level of the basement floor. In constructing the building the plaintiffs caused to be installed outside the basement wall and immediately next to the same and on top of the foundation footing a continuous line of drainage tile. This tile connected with a sump in the northeast part of the basement floor. The sump was 30 inches deep, 4 feet long, and 2 feet wide. Automatic pumps were installed in the basement to lift any water collecting in the sump and deposit it in the street gutter. in front of the building. The purpose of this drainage system was to avoid the creation of hydrostatic pressure upward against the floor and inward against the walls of the basement and to prevent leakage through cracks, because of natural water seepage during the rainy seasons of the year. It was in no way designed to handle surface water.

The wall of the building was constructed of concrete from the footing upward to about 4 feet above

ground level and from there upward, of pumice blocks. After the wall had been erected the excavation next thereto was filled in. Some gravel was used in filling in immediately around and above the tile, but the fill was largely composed of wet dirt taken from that which had been removed in making the excavation. The dirt was tamped down, and a bulldozer was used to pack it firmly along the east wall.

Prior to January 5, 1948, apart from a leak through a crack in the basement wall (which was repaired), plaintiffs experienced no trouble whatever from water in their basement, though in the meantime there had been considerable rain in that vicinity. The water that did collect in the sump through their drainage system was easily and adequately handled by the automatic pumps in the basement.

The evidence on the trial disclosed that the practice followed in the construction of plaintiffs' building, including the drainage system as installed, was approved building practice for that community.

■ Sweet Home is located in the Willamette valley in Oregon. It is a matter of common knowledge that during the winter months of the year there is usually a somewhat continuous and sometimes heavy rainfall throughout that valley, and the deep, rich soil for which this section of Oregon is noted becomes completely saturated with water. In the absence of a suitable drainage system around buildings having basements, the natural seepage of water constitutes a decided menace, and steps are usually taken to provide therefor, as were taken in this case.

From the record before us, it appears that the land lying between Long street and Main street has a slight

downward slope to the north, causing surface water to flow from the south to the north.

In late October, 1947, defendants George Gessler and wife began the construction of a theater building on their property immediately east of plaintiffs' building. This construction required an excavation which was concave in nature, gradually sloping from each end of defendants' property toward the center thereof, and at its deepest point it was approximately 4½ feet deep. This excavation extended the entire width of defendants' land and along the westerly side thereof required the removal of a part of the fill placed there by plaintiffs immediately over their drainage system. Along the westerly side next to plaintiffs' east wall excavation was also required for construction of the concrete footing upon which defendants' east wall was to rest. In constructing their west wall, and with plaintiffs' consent, defendants used plaintiffs' east wall as the outer side of the forms into which the concrete for their wall was poured, the inner form being constructed of lumber. Upon completion, the two walls were thus joined.

At the time of the events complained of, the concrete sidewall of defendants' building on the west side of the excavation and next to plaintiffs' building had been poured and the wall forms removed, but no floor had been laid, and the forms and stakes for the footing of the wall had not been removed. No roof nor upper walls had been constructed, and the excavation was open. No provision had been made by defendants for the removal of any water that might collect in said excavation. Therefore, on January 5, 1948, defendants' excavation was open immediately adjacent to plaintiffs' east basement wall, and at its deepest point it was ap-

proximately 16 inches above the line of drainage tile around plaintiffs' building.

On January 5, 1948, rain and surface water had collected in defendants' excavation to a depth of approximately 4 feet. On the night of January 5 and 6 this water broke through the soil between the bottom of the excavation and plaintiffs' drainage tile and poured into plaintiffs' basement through the tile, filling the basement to a depth of 42 inches.

This water damaged food and restaurant supplies stored in the basement, and also books and records and electric motors located therein. By the use of fire department equipment and other pumps, plaintiffs caused the removal of this water at considerable expense, but it was not entirely removed until defendants' excavation was also pumped empty via plaintiffs' tile and sump.

There was testimony on the trial to the effect that the water in defendants' excavation had created such a hydrostatic pressure in the ground that the pressure upward against plaintiffs' basement floor had cracked the same, requiring replacement or repair.

After the first flooding due to the first accumulation of water in defendants' excavation and because of exceptionally heavy rain, surface water flowing from the south to the north across plaintiffs' land poured into defendants' excavation and on into plaintiffs' basement. This latter flow of water is described by the parties as a "flash flood." It was during this flash flood that some surface water flowed into plaintiffs' building through the back door thereof.

Because of the damages suffered, plaintiffs instituted this action. The complaint contains two alleged causes of action for the same relief. The factual situa-

tion stated in both causes is the same. The causes differ in that the first does not allege that any act of negligence on the part of defendants brought about the alleged injury. In substance, this cause merely alleges that plaintiffs and defendants were adjoining landowners; that the plaintiffs constructed a basement upon their property approximately 6½ feet deep and constructed a building over said basement; that the defendants caused to be made upon their land an excavation, the lowest point of which was approximately 1½ feet higher in elevation than plaintiffs' basement; that water accumulated in said excavation and escaped therefrom into plaintiffs' basement, causing the damage of which plaintiffs complain. In the second alleged cause of action, plaintiffs reallege their first cause and add allegations of negligence on the part of defendants as the proximate cause of the injuries in question.

Defendants demurred to the first cause of action on the ground that it failed to state facts sufficient to constitute a cause of action. The demurrer was overruled and defendants answered. After denying the material allegations of the complaint, defendants affirmatively pleaded: (1) that the injuries of which plaintiffs complained were brought about through their own acts and negligence, and (2) that the same were due to an Act of God. By their reply, plaintiffs put in issue the affirmative allegations of new matter contained in the answer. Upon the trial defendants in effect abandoned their second affirmative defense.

Upon the conclusion of plaintiffs' case in chief, defendants moved for an order of involuntary nonsuit; and the motion being overruled, they rested their case without offering any evidence and then moved for a directed verdict in their favor. This motion was also overruled. Exceptions were duly taken by defendants.

As their first assignment of error, defendants contend the trial court erred in overruling their demurrer.

Plaintiffs' first cause of action to which the demurrer was directed was based upon the theory of liability without fault. In resisting the demurrer, plaintiffs contended that the case was governed by the rule established in *Rylands v. Fletcher,* 1 E.R.C. 236, L.R., 3 H.L. 330, and they urge the same contention on this appeal.

In *Rylands v. Fletcher,* supra, absolute liability was imposed upon one who introduced water on his own land for his own purposes, where the water escaped onto the land of his neighbor. In that case, at page 249, Justice Blackburn said:

"We think that the true rule of law is, that the person who *for his own purposes* brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff's default; or perhaps that the escape was the consequence of *vis major,* or the act of God; but as nothing of this sort exists here, it is unnecessary to inquire what excuse would be sufficient." (First italics ours.)

The rule thus established has been adopted in a number of jurisdictions in this country, but in a majority of the jurisdictions has been rejected.

However, a careful study of prior decisions by this court will disclose that the rule as above quoted has been adopted in Oregon. It is unnecessary for us in this opinion to discuss those decisions, because they have been thoroughly discussed and correctly analyzed in an exceptionally able opinion recently written by

the Honorable James Alger Fee, United States District Judge for the District of Oregon, reference to which opinion is hereby made: *Ure et al. v. United States*, 93 F. Supp. 779. Under the facts of the case then before the court, Judge Fee correctly interpreted and applied the law of this state.

But that does not mean that the rule is applicable to the facts in the case now before the court. Though some courts have apparently done so, nevertheless, we are unwilling to extend the application of the rule beyond its plain import.

█ The excavation here was not for the purpose of constructing a reservoir to hold water. It was made in the ordinary course of building construction and was temporary in character. The waters collected in the same were not brought there to serve any purpose of defendants and were perhaps as unwelcome to defendants as to plaintiffs. In making the excavation, defendants were engaged in a lawful and reasonable use of their property. It was necessarily the first step taken in construction of the building. Before defendants were able to cover the excavation, it was, through natural causes over which they had no control, filled with water. Considering the time of the year this construction was commenced and carried on, the defendants, in an exercise of due care on their part, should have anticipated this flow of water into their excavation and the hydrostatic pressure and seepage that would likely ensue therefrom and taken some precautions, such as artificial drainage, to avoid injury to the adjoining landowner. But the basis of their liability here is negligence, and it is not a case of liability without fault. 1 Am. Jur., Adjoining Landowners, 508, § 8; 38 Am. Jur., Negligence, 799, § 139.

In *Schweiger et al. v. Solbeck et al.,* — Adv. Sh. — (April 4, 1951), Mr. Justice HAY, speaking for this court, said:

> "Taking into consideration the heavy rainfall which is normal in the area involved in this case, it is impossible to conclude from the evidence that that which immediately preceded the disaster was at all extraordinary. It was a heavy rain, but not of unprecedented proportions. In its occurrence and magnitude, it might have been anticipated by a person of reasonable prudence."

Plaintiffs contend that it is unimportant to the application of the rule of *Rylands v. Fletcher,* supra, that this excavation was not constructed for a reservoir. Under some circumstances that might be true, but not under the circumstances of this case.

As authority for their position, plaintiffs invite our attention to the decision in *Canon City & C. C. R. Co. v. Oxtoby,* 45 Colo. 214, 100 P. 1127. In that case there was involved the escape of water from a "borrow pit" excavated by defendant. The doctrine of liability without fault was applied. However, a "borrow pit" is a more or less permanent excavation and, in effect, a reservoir, though not such for any use or purpose of the owner. In that case the Colorado court said:

> "The evidence shows, and it is a matter of common knowledge, that water collected in a reservoir, if the same is not artificially drained, or its banks and bottom puddled, has a tendency to seep and will seep or percolate into the adjacent lands, and if, as here, the same is adobe soil, to its injury. The defendants are presumed to know of this physical law.
>
> "* * *
>
> "* * * for injuries occasioned to the adjoining lands of another by seepage of water, there

is just as much reason for imposing liability upon the owner of the pond or lake into which he has gathered surface water for no other beneficial use, but merely as an incident to a proper use of his own lands, as upon one who stores water in a reservoir for irrigation.''

That Colorado case was one in which the retaining of the water in the ''borrow pit'' involved an extraordinary and unusual danger to the adjoining landowner. Moreover, the case could just as well have proceeded and been decided upon the theory of negligence, in that there was a plain duty on the part of the owner to artificially drain the pit or take other proper steps, so that damage would not be caused his neighbor.

However, it is manifest that a ''borrow pit'' of a more or less permanent character is much different from a temporary excavation made in the ordinary course of building construction and designed to be covered at the earliest opportunity.

Plaintiffs also invite attention to the case of *Johnson v. Sulton Ry. & Timber Co.*, 145 Wash. 106, 258 P. 1033, 54 A.L.R. 356. In that case the factual situation bore some similarity to that in *Schweiger et al. v. Solbeck et al.*, supra. In the Schweiger case, Mr. Justice HAY discussed this Washington decision.

In the Washington case it appeared that in its logging operations defendant permitted trees, tops, and other debris to remain in a running stream. When rain would come or the snow in the mountains melt, the waters in the creek would rise and carry this debris downstream, forming from time to time a jam or small dam. A large jam had been so formed, which caused the waters to be impounded above the same. There occurred a heavy and unusual rainfall accompanied by

a Chinook wind which caused the snow in the mountains to melt rapidly. The creek rose, water was impounded behind the jam, and it in time gave way and this water rushed down the creek, broke the dike which plaintiffs had constructed along the bank of the creek adjoining their farm, and flooded the farm, causing the damage of which plaintiffs complained. The defendant contended that its logging operations had been carried on in the usual and customary manner. As to this defense, the court said:

> "Since the law imposes a liability regardless of negligence, any custom that might exist among logging companies in their operations would not be material."

The court based its conclusion upon a statement in a note in Annotated Cases, appended to a report of the decision in *Corporation of Greenock v. Caledonian Railway Co.*, Scotland, House of Lords, July 23, 1917 [1917] A.C. 556, Ann. Cas. 1918A, 1103. The following was quoted from that note:

> "The duty of a person diverting or obstructing the natural course of a stream is to provide not only for the normal rainfall but for such floods or freshets as may occasionally occur, whether they are called ordinary or extraordinary, though not for unprecedented floods of which the usual course of nature affords no premonition. Hence, where the evidence in a particular case shows that the flood in question was such a flood as experience indicated must be expected to recur at irregular intervals, a person who so obstructed a natural water course that damage was caused by the flood which would not have resulted without the obstruction is liable therefor."

The statement of the Washington court heretofore quoted and which is relied upon by plaintiffs must be

read in the light of the facts in that case. The factual situation there is far removed from that of the instant case, and the rule stated has no application here.

In 1 Am. Jur., Adjoining Landowners, 506, § 3, the following rule is stated:

"The test of the permissible use of one's own land is not whether the use or the act causes injury to his neighbor's property, or whether the injury was the natural consequence, or whether the act is in the nature of a nuisance, but the inquiry is, was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard to all interests affected, his own and those of his neighbors, and having in view also, public policy."

■ Obviously, the construction of this theater building, involving as it did, the necessity of making the excavation in question, was a reasonable exercise of the dominion which defendants had over their own property, and in that connection they were required only to exercise due care that injury to their neighbor would not result therefrom. The degree of care required of them was commensurate with the danger involved.

Defendants' demurrer to plaintiffs' first cause of action should have been sustained. It does not follow, however, that the error of the court in overruling the demurrer was prejudicial to defendants, requiring a reversal of the trial court's judgment.

In its instructions to the jury the trial court did not submit the theory of liability without fault. On the contrary, the court expressly submitted the case to the jury on the theory of negligence. In effect, the trial court removed from the jury's consideration plaintiffs'

first cause of action. In part, the court instructed as follows:

"Before you can find for the plaintiffs in this case, you must find the defendants were negligent in at least one of the acts alleged in the plaintiffs' complaint, and you must further find * * * that such negligence, if any, was the proximate cause, as I have previously defined the term 'proximate cause' for you, of the injury suffered by the plaintiffs, if any.

"I instruct you that if you find from the evidence that the injuries, if any, suffered by the plaintiffs were the result of their own acts and such acts were the proximate cause of such injury, you must find for the defendants, for it is the law of this state that one cannot profit or recover from another for his own acts which result in his injury."

■ In view of the fact that the court expressly submitted the case to the jury upon the theory of negligence and limited its consideration of the case to that theory, it is manifest that defendants suffered no injury from the court's original error in failing to sustain their demurrer.

Defendants' second assignment of error is based upon the action of the trial court in overruling their motion for an involuntary nonsuit, and also their motion for a directed verdict.

Defendants' principal contention under this assignment of error is that under the evidence it appears as a matter of law that plaintiffs were guilty of acts of negligence proximately contributing to the damage complained of, and further, that it appears conclusively that plaintiffs own trespass upon the property of defendants was in fact the proximate cause of the injury.

■ From a careful examination of the entire record, we conclude that the question of plaintiffs' alleged contributory negligence was one of fact to be submitted to the jury and, therefore, find no merit in this contention of defendants.

■ As to the contention urged by defendants that plaintiffs were guilty of a trespass upon defendants' land, and that that trespass in fact caused the injuries of which plaintiffs complain, we find from our examination of the record that the question of whether or not plaintiffs were guilty of a trespass upon defendants' land was properly submitted to the jury for determination as one of fact. Furthermore, if the jury found that there had been a trespass, it was a question of fact for it to determine whether such wrong proximately caused or proximately contributed to cause the injuries in question. Under the evidence in this case these questions could not be determined as matters of law.

■ Defendants third assignment of error is based upon the refusal of the trial court to sustain their motion to take from the jury's consideration the several specifications of negligence charged against defendants in plaintiffs' complaint. The motion was properly denied. There was substantial evidence in the record justifying the submission of these issues to the jury.

We find no prejudicial error in the record in so far as defendants are concerned.

On their cross-appeal, plaintiffs assign as error the refusal of the court to give to the jury a number of their requested instructions, and also the giving of certain instructions which they contend were erroneous.

■ Many of the requested instructions which the court refused to give were based upon the theory of plaintiffs' first cause of action. No useful purpose

would be served in setting forth those requested instructions here. The action of the court in refusing to give the same was proper.

■ Of course, all these requested instructions were directed to the question of liability. That also is true of the several instructions given by the court to which plaintiffs except. For example, plaintiffs took exception to the instruction of the court submitting the question of plaintiffs' contributory negligence. But inasmuch as the jury found in favor of plaintiffs upon the issues as submitted, they have in no way been harmed, irrespective of whether the trial court was right or wrong.

Plaintiffs also contend that the evidence is undisputed that they suffered a total damage of $1540.99, and that there is no basis in the evidence for the finding of the jury that their damage amounted only to $748.67. They ask us to direct entry of judgment in their favor for the full amount of $1540.99, pursuant to the authority which they claim is vested in this court under the provisions of Or. Const. Art. VII, § 3.

In passing, we note the fact that plaintiffs did not request the trial court to instruct the jury that in the event the jury found the issues in favor of plaintiffs, they should return a verdict in plaintiffs' favor in the amount claimed; neither did they except to the instruction given by the court covering the measure of damages.

■ Plaintiffs suggest that the verdict is a quotient verdict and, therefore, invalid. However, there is nothin the record to indicate that. To hold the same to be a quotient verdict would require us to enter the realms of pure speculation, which we are not permitted to do.

■ However, we agree with defendants that the evidence in the record discloses a situation where there might well be an honest difference of opinion as to the amount of the damages for which defendants should be held liable, and we cannot say, in the light of the entire record, that the jury erred in fixing the amount of its verdict.

The judgment is affirmed.