Argued March 31, reversed and remanded October 7, 1953

BEDELL ET UX. *v.* GOULTER ET AL.

261 P. 2d 842

*H. V. Johnson,* of Eugene, argued the cause for appellants. With him on the brief were Harold V. Johnson, Jr. and James P. Harrang, of Eugene.

*Windsor Calkins* argued the cause for respondents. On the brief were Calkins & Calkins, of Eugene.

Before LATOURETTE, Chief Justice, and ROSSMAN, LUSK and PERRY, Justices.

LUSK, J.

This is a case of first impression in this court. It presents the question whether damages may be recovered for injury to real property caused by concussion or vibration from blasting operations where it is

neither pleaded nor proven that the defendant was negligent in the conduct of such operations. In a jury trial at the conclusion of the testimony the court, being of the opinion that the amended complaint on which the case was tried did not state facts sufficient to constitute a cause of action because no negligence was alleged, sustained a motion for judgment of involuntary nonsuit interposed after plaintiffs had put in their case in chief. From that judgment plaintiffs have appealed.

The amended complaint (omitting the allegations as to damages) reads as follows:

"I.

"1. That during all the times herein mentioned Plaintiffs were and now are husband and wife. That they were and now are the owners and in possession of a lot of land with a house thereon, described as follows:

"(Whereupon, there followed a legal description of 20.94 acres which is omitted.)

"2. That on the 29th day of September, 1949, and for approximately 15 months prior thereto, Defendants, while engaged in excavating on land adjoining and in close proximity to Plaintiffs' land and house, exploded large quantities of explosives; that Defendants were engaged in the construction of a railroad grade and that their explosions, which were set off at intervals during the 15 month period, produced great and violent concussions and vibrations of the earth and air which shook the Plaintiffs' land and house and the air above and around them, and caused great injury to the foundation of the house and the entire superstructure, including its walls which were cracked, its windows one being cracked and the putty knocked from others, its pipes which were caused to leak in the bathroom and kitchen, its bathtub which was caused to settle, its fireplace which was cracked. The Defendants blast-

ing produced recurrent vibrations which caused the cumulative injury to Plaintiffs' house and an unreasonable interference with the use and enjoyment of the premises in the nature of a nuisance. The injuries to Plaintiffs' house did not appear to an extent that could be measured exactly following each blast, but were the cumulation from the Defendants' entire line of conduct in the construction job close to Plaintiffs' premises.

"3. At all times the Defendants worked in disregard to Plaintiffs' right and in disregard to Plaintiffs' protests concerning the injury to Plaintiffs' premises, notwithstanding the fact that the Defendants knew that their blasting operations were progressively damaging Plaintiffs' property.

"II.

"That Defendants, by their blasting operation in close proximity to Plaintiffs' premises, on September 29, 1949, and for approximately 15 months prior thereto, caused vibrations and heavy concussion to travel and trespass upon Plaintiffs' premises causing direct injury to the foundation and superstructure in the particulars set out above.

"III.

"That Defendants, while constructing the railroad grade in close proximity to Plaintiffs' premises, and using large quantities of high explosives, were engaged in an ultrahazardous activity which produced concussions and vibrations which caused injury to the foundation and superstructure of Plaintiffs' house in the particulars set out above."

The courts hold quite uniformly that irrespective of negligence one lawfully engaged in blasting operations is liable for property damage sustained as a result of casting rocks or other debris on adjoining or neighboring premises. 35 CJS, Explosives, 238, § 8; *Exner v. Sherman Power Const. Co.*, 54 F2d 510, 513 (1931), and cases from numerous jurisdictions there

cited. A recent contrary holding is *Reynolds v. W. H. Hinman Co.*, 145 Me 343, 75 A2d 802, 20 ALR2d 1360 (1950). Where, however, there is no actual invasion of land of the kind just stated, but damage results solely from vibration or concussion, as is the case here, some authorities have denied liability without proof of negligence. *Booth v. Rome, W. & O. T. R. Co.*, 140 NY 267, 35 NE 592, 24 LRA 105, 37 Am St Rep 552, is recognized as the leading exponent of this doctrine. For other cases see Annotation, 20 ALR2d 1372, 1388 et seq. The courts so holding base the distinction on the historical difference between actions of trespass and case, a view which has been severely criticized by other courts which adhere to the rule of absolute liability in concussion cases. 20 ALR2d 1375; 22 Am Jur 180, Explosions and Explosives, § 54; Prosser on Torts 80. This distinction, says Dean Prosser, "has been denounced repeatedly as a marriage of legal technicality with scientific ignorance." In *Exner v. Sherman Power Const. Co.*, supra, Judge Augustus N. Hand, writing the opinion for the court, said:

"It is true that some courts have distinguished between liability for a common-law trespass, occasioned by blasting, which projects rocks or debris upon the property or the person of the plaintiff, and liability for so-called consequential damages arising from concussion, and have denied liability for the latter where the blasting itself was conducted at a lawful time and place and with due care [citing cases]. Yet in every practical sense there can be no difference between a blasting which projects rocks in such a way as to injure persons or property and a blasting which, by creating a sudden vacuum, shatters buildings or knocks down people. In each case, a force is applied by means of an element likely to do serious damage if it explodes. The distinction is based on historical differences between

the actions of trespass and case and, in our opinion, is without logical basis.''

See to the same effect, *Colton v. Onderdonk,* 69 Cal 155, 10 P 395, 58 Am Rep 556; *Muskogee v. Hancock,* 58 Okla 1, 158 P 622, LRA 1916F 897; *Whitman Hotel Corp. v. Elliott & W. Engineering Co.,* 137 Conn 562, 79 A2d 591; *Antinozzi v. D. V. Frione & Co.,* 137 Conn 577, 79 A2d 598; *Johnson v. Kansas City Ry. Co.,* 182 Mo App 349, 170 SW 456; *McGrath v. Basich Brothers Const. Co.,* 7 Cal App2d 573, 46 P2d 981; *Bluhm v. Blanck & Gargaro,* 62 Oh App 451, 24 NE2d 615; *Louden v. City of Cincinnati,* 90 Oh St 144, 106 NE 970, LRA 1915E 356, Ann Cas 1916C 1171; *Longtin v. Persell,* 30 Mont 306, 76 P 699, 65 LRA 655, 104 Am St Rep 723; *Federoff v. Harrison Const. Co.,* 362 Pa 181, 66 A2d 817; *Watson v. Mississippi River Power Co.,* 174 Ia 23, 156 NW 188, LRA 1916D 101; *Hickey v. McCabe & Bihler,* 30 RI 346, 75 A 404, 27 LRA (ns) 425; *Patrick v. Smith,* 75 Wash 407, 134 P 1076, 48 LRA (ns) 740; *Brown v. L. S. Lunder Const. Co.,* 240 Wis 122, 2 NW2d 859; Smith, Liability for Substantial Physical Damage to Land by Blasting, 33 Hav L Rev 542, 544-549; Harper, The Law of Torts, § 204.

We are satisfied that, for the reasons so convincingly stated in the Exner case, as well as in many of the other cases cited, the rule of liability should be the same whether the blaster injures his neighbor's land by casting rocks, debris or other material on it or by setting in motion concussions or vibrations of the earth or air. In neither case is it necessary for a plaintiff to allege and prove negligence. This conclusion, however, while it may warrant a holding that the amended complaint is good, is not necessarily dispositive of the case. One ground of the motion for

nonsuit was that the evidence was insufficient. If this is a tenable ground it makes no difference whether the pleading is sufficient. Although there was substantial evidence to support the allegations of the amended complaint, the evidence respecting the character of the locality in which defendants' blasting operations were carried on and its distance from the plaintiffs' house requires us to examine the question of the exact nature and extent of the rule of so-called absolute liability in a case of this kind. In the language of the lawyer which evoked the parable of the Good Samaritan, "Who is my neighbor?" within the meaning of the rule.

■ The testimony discloses that the defendants, father and son, were engaged in a grading job in connection with the relocation of the tracks of the Southern Pacific Railway Company under a contract with the United States Army Engineers near Lost Creek, Oregon. The location of Lost Creek is not shown other than that it is in Lane County. The defendants' work, which necessitated blasting, commenced in the spring or summer of 1948 and was completed in September, 1949. Plaintiffs' dwelling house, according to the testimony of the plaintiff Charles J. Bedell, was 1200 feet or 1500 feet distant from the blasting at its nearest point and 2000 feet at its farthest. There is testimony concerning a few other houses in the vicinity, but the record leaves the clear inference that it was not a thickly populated district but rather open country. Charles J. Bedell testified that the "hard blasting" did not commence until the spring or summer of 1949, and that a few days thereafter cracks opened up in the plaster of his house. Two or three weeks later he noticed breaks in the fireplace. He complained to the defendants about the damage, and their foreman and

the defendant K. S. Goulter went to plaintiffs' house to examine it. The complaint appears to have been made in July, 1949, and the evidence indicates that some of the damage occurred after that time. The evidence would justify a finding that the defendants' blasting operations were the proximate cause of injury to plaintiffs' dwelling. In fact, Mrs. Bedell testified that Bergstrom, the defendants' foreman, at the time he came to the house, said that they were going to set off a blast to observe its effect, and, that while he was there a blast was set off which caused the house to shake, and that soon after she observed a crack in the corner of the room and that the plaster had fallen.

■ The rule of liability is thus stated in the Exner case:

"Dynamite is of the class of elements which one who stores or uses in such a locality, or under such circumstances as to cause likelihood of risk to others, stores or uses at his peril. He is an insurer, and is absolutely liable if damage results to third persons, either from the direct impact of rocks thrown out by the explosion (which would be a common-law trespass) or from concussion."

In the Exner case the evidence showed that dynamite in large quantities was stored by the defendant in a hut 935 feet distant from plaintiffs' dwelling. While boxes of dynamite were being removed from the hut an explosion occurred. The consequent concussion shattered the dwelling and caused personal injuries to one of the plaintiffs. The court said:

"While the rule laid down by Blackburn, J., in Rylands v. Fletcher [sic], 1 Exch. at page 265, and approved by the House of Lords in Fletcher v. Rylands [sic], L. R. 3 H. L. page 339, has not been followed in America to the full extent of all its

implications, and, at the outset its authority was impaired by Brown v. Collins, 53 N. H. 442, 16 Am. Rep. 372, Marshall v. Welwood, 38 N. J. Law, 339, 20 Am. Rep. 394, and Losee v. Buchanan, 51 N. Y. 476, 10 Am. Rep. 623, yet in the so called 'blasting' cases an absolute liability, without regard to fault, has uniformly been imposed by the American courts wherever there has been an actual invasion of property by rocks or debris'' (citing cases from fourteen American jurisdictions).

After holding that there is no reason for applying a different rule of liability to an accidental explosion of dynamite and an intentional explosion in blasting operations, the court referred to the facts of the case as follows:

"Frequently as much as one thousand pounds of dynamite were stored by the defendant near a group of dwellings, factories, and a hotel. The fact that the explosion was severe enough to kill three men, blow up the hut, unsettle and damage the plaintiff's house, over nine hundred feet away, and that even then, one hundred pounds of dynamite still remained unexploded, shows that there must have been a large amount of dynamite in or about the hut at the time of the accident. When a person engages in such a dangerous activity, useful though it be, he becomes an insurer.''

The court further said:

"* * * If damage is inflicted, there ordinarily is liability, in the absence of excuse. When, as here, the defendant, though without fault, has engaged in the perilous activity of storing large quantities of a dangerous explosive for use in his business, we think there is no justification for relieving it of liability, and that the owner of the business, rather than a third person who has no relation to the explosion, other than that of injury, should bear the loss. The blasting cases seem to afford ample analogies and to justify this conclusion.''

The Exner case is cited in Harper on Torts, p. 338, note 22, as approving *Rylands v. Fletcher*.

The American Law Institute phrases the rule in the Restatement, Torts, as follows:

§ 519. "Except as stated in §§ 521-4 [not pertinent here], one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm."

§ 520. "DEFINITION OF ULTRAHAZARDOUS ACTIVITY.

"An activity is ultrahazardous if it

"(a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and

"(b) is not a matter of common usage."

In Comment c to § 520 it is said:

"* * * Blasting is ultrahazardous because high explosives are used and it is impossible to predict with certainty the extent or severity of its consequences."

See, also, Comment e.

In *Whitman Hotel Corp v. Elliott & W. Engineering Co.* (1951), supra, blasting with dynamite was carried on by defendant in close proximity to a number of compactly located business buildings and withn 250 feet of plaintiff's property, which suffered injury through vibration caused by the blasting operation. A judgment for plaintiff was sustained. The rule of liability was thus stated:

"It is almost universally held that one who by exploding dynamite causes damage to another's

property through flying debris is absolutely liable for that damage irrespective of whether he was negligent either in the selection of the time or place for the blasting or in the method of blasting which he followed. This rule rests on the principle that the explosion of dynamite is an intrinsically dangerous operation and that, therefore, one who engages in it acts at his peril.''

The Restatement was cited as authority. Language used in an earlier decision of the Connecticut court was interpreted as having the following meaning:

''* * * It means that, to make out a case of intrinsically dangerous operation upon which absolute liability may be predicated, it is essential that it appear that the dynamite was discharged under such circumstances that it, in fact, necessarily or obviously exposed the person or property of another to the danger of probable injury.''

Judge Baldwin and Judge O'Sullivan each wrote a concurring opinion in which they took issue with the majority as to the interpretation of the language of the earlier decision. As their views bear directly upon the present question we quote Judge O'Sullivan's opinion in full:

''I concur in the result on the basis of the dogmatic proposition, with which the opinion begins its legal discussion, that 'one who by exploding dynamite causes damage to another's property through flying debris is absolutely liable for that damage irrespective of whether he was negligent. * * *' This principle makes an insurer of the blaster, and rightly so. Exner v. Sherman Power Construction Co., 2 Cir., 54 F2d 510, 512, 80 A.L.R. 686. Dynamite is an intrinsically dangerous substance. Worth v. Dunn, 98 Conn. 51, 60, 118 A. 467; Norwalk Gaslight Co. v. Borough of Norwalk, 63 Conn. 495, 527, 28 A. 32. The possibility of its doing damage is great. The blaster should be sub-

jected to absolute liability for injury to any property caused by the potentially destructive energy of a force which he has intentionally released. If I understand the opinion correctly, it makes liability absolute only when dynamite is used 'in such a way as will necessarily or obviously expose the [property] of another to the danger of probable injury.' This means, inferentially, that under circumstances which do not fall within the quoted phrase liability is conditioned on negligence. This emasculates the principle that the blaster acts at his peril. It reaches a result with which I am not in accord.''

In *Federoff v. Harrison Const. Co.* (1949), supra, plaintiffs' dwelling house was damaged by blasting carried on 1600 feet (at some points) and 300 feet (at others) distant. Liability was sustained on the authority of the Restatement without discussion of distance or other similar circumstances. The court said that § 519 of the Restatement, Torts, reflected the trend shown in one of its own decisions and referred to Workmen's Compensation Laws and statutes requiring the guarding of classes of machinery as familiar examples of the same trend.

*Bradford Glycerine Co. v. Manufacturing Co.*, 60 Ohio St 560, 54 NE 528, 71 Am St Rep 740, 45 LRA 658, presented squarely the question whether distance is a factor in the application of the rule. The damage was caused in that case by an explosion of a magazine of nitroglycerine. The premises on which the explosive substance was stored and the injured building were a mile apart. The court held this to be immaterial, saying:

''* * * One who in blasting rock should cast fragments across a strip of adjacent land owned by a third person against the windows of a more remote proprietor would hardly be heard to say in

defense of his act that the property injured was not adjacent. Whatever duty he owed to his neighbor extended equally to all who might fall within the lines of danger. So it would seem that in the case of explosives, the right of all within the circle of danger should be equal, irrespective of whether the property injured was adjacent to the premises upon which the material was stored."

It was held that the doctrine announced by Justice Blackburn in *Fletcher v. Rylands,* 1 Exch L R 265, and afterwards approved in *Rylands v. Fletcher,* LR 3 H L 330, applied to the case, the court concluding:

"* * * that the storing of nitroglycerine should be deemed to be an extraordinary and unusual use of property, and we can see no principle upon which an exception to the general doctrine laid down in Fletcher v. Rylands, supra, can be held to exist in favor of one who stores upon his own premises that or any other dangerous explosive."

In *Britton v. Harrison Const. Co.,* 87 F Supp 405 (1948), Chief Judge Moore of the United States District Court for the Southern District of West Virginia thus stated the question presented by a motion to dismiss the complaints:

"Is a person who intentionally sets off a dynamite blast in the conduct of a lawful blasting operation absolutely liable for damage to houses *(however distant from the scene of the blast),* or must the plaintiff as a condition precedent to recovery allege and prove some act of negligence on the part of the person responsible for the blasting?" (Italics added.)

On the authority of the Exner case the court denied the motion, saying:

"I am impressed with Judge Hand's reasoning, and regard the law of the Exner case as being especially applicable to present day conditions, when

major improvements are being effected in already overcrowded localities. The use of dynamite in blasting is a well-recognized practice, but the injurious results often occasioned thereby are equally well known. Any person who uses it in such manner as to cause damage to his neighbor must be held absolutely liable therefore.''

In the later case of *Parcell v. United States,* 104 F Supp 110, Judge Moore applied the rule of absolute liability to a case involving damage to real property caused by a crash of United States air force planes.

Referring to the Britton case Judge Moore said:

''* * * Since under the common law a defendant is liable irrespective of negligence for damages resulting from a trespass *quare clausum fregit* caused by concussions and vibrations set in motion by a dynamite explosion, I concluded that the defendant there was absolutely liable.''

The court held that the two cases were governed by the same rule and cited the opinion of Judge Parker in *D'Anna v. United States,* 181 F2d 335, where the Restatement, Torts, §§ 519, 520, is relied on as authority for the statement: ''At common law, the hazardous nature of the enterprise subjected the operator of the plane to a rule of absolute liability to one upon the ground who was injured or whose property was damaged as a result of the operation.''

The English case of *Rainham Chemical Works, Ltd., v. Belvedere Fish Guano Co., Ltd.,* 2 A C 465 (1921), holds that the rule of *Fletcher v. Rylands* governed an action brought for injury to property caused by an explosion of a large quantity of dinitrophenol, which was stored at the defendant's works for the purpose of manufacturing picric acid. Lord Buckmaster said:

''Now, the foundation of the action was a claim

based upon the familiar doctrine established by the case of Fletcher v. Rylands [L. R. 3 H. L. 330], which depends upon this—that even apart from negligence the use of land by one person in an exceptional manner that causes damage to another, *and not necessarily an adjacent owner,* is actionable [citing cases]. In the present case the use complained of was that for the purpose of making munitions, which was certainly not the common and ordinary use of the land, two substances, namely, nitrate of soda and dinitrophenol, were stored in close proximity, with the result that on a fire breaking out they exploded with terrific violence. It may be accepted that it was not known to either of the defendants that this danger existed, but that in itself affords no excuse, and the result is that the plaintiffs' cause of action is well founded and the only matter for determination is against whom the action should be brought.'' (Italics added.)

See, also, *Jones v. Al Johnson Const. Co.,* 211 Minn 123, 300 NW 447; *Fairfax Inn, Inc. v. Sunnyhill,* 97 F Supp 991 (ND W Va) (1951); *City of Knoxville v. Peebles,* 19 Tenn App 340, 87 SW2d 1022 (1935); *Brown v. L. S. Lunder Const. Co.,* supra.

In many of the cases, however, the distance between the point of the explosion and the property or person injured, density of population, and other like circumstances are considered relevant factors. Thus, in a Washington case in which the evidence was that rock was thrown by blasting between 940 and 1200 feet, striking a person and killing him, the court reversed a judgment for the plaintiff because of an instruction which eliminated the question of negligence and told the jury to find for the plaintiff if the rock which struck the deceased came from a blast discharged by the defendants. *Klepsch v. Donald,* 4 Wash 436, 30 P 991, 31 Am St Rep 936. The court repudiated the doctrine of

*Fletcher v. Rylands,* and held that proof of negligence was necessary, and that under the circumstances the fact of the injury was sufficient prima facie evidence. The decision appears to have the approval of Prosser on Torts, p. 459, and Harper, The Law of Torts, p. 410, in so far as it limits the doctrine of absolute liability, though it is difficult to perceive that the Washington court there recognized the doctrine in cases of this character at all. But in the later case of *Patrick v. Smith,* supra, it appears to have done so.

In the article by Professor Jeremiah Smith in 33 Harv L Rev, previously cited, the learned author, contending that there is no rule of absolute liability in blasting cases where the damage is caused by vibration or concussion, distinguishes between two kinds or descriptions of negligence, to-wit, (1) negligence in making an attempt to blast at all at the time and place in question, and (2) negligent conducting of blasting operations when taken at a proper time and place. And he argues with considerable justification, as it seems to us, that "When the courts speak, as they do in some of the * * * cases, of damages as being the 'necessary and probable and natural result' of defendant's conduct, they must generally be taken to mean that his conduct was negligent. It is implied that he foresaw, or ought to have foreseen, the consequences." (pp. 674, 675, 676.) This was precisely the view of the specially concurring judges in the Whitman Hotel Corporation case. Many of the cases referred to by Professor Smith are decided on the nuisance theory. They are well illustrated by *Flynn v. Butler,* 189 Mass 377, 75 NE 730, which holds that it is for a jury to determine from evidence as to the proximity of dwellings or of highways, or of the usual facilities for public

travel, or the density of population, whether a magazine filled with gunpowder "was within that class of dangerous objects that, according to common experience, are likely to cause damage, or are considered so intrinsically harmful as to expose the persons or property of others to the chance of instantaneous injury or destruction." If such condition was established then maintenance of the magazine constituted a nuisance. Again, in *Whaley v. Sloss-Sheffield S & I Co.,* 164 Ala 216, 225, 51 So 419, the court laid down the rule as follows:

> "* * * Explosives may be stored or kept, in such quantities, and of such kinds, and in such localities, and for such time, and for such purposes, as to be per se a nuisance; and in such cases the person so creating, or so continuing, such nuisance, is liable for all damages suffered in consequence thereof, irrespective of negligence or want of care in so storing, keeping, causing, or allowing explosions thereof."

The court then proceeded to enumerate various conditions under which the keeping or storing of an explosive might or might not be a nuisance per se. Ultimate determination of the question was held to have been properly submitted to the jury. Similar decisions may be found cited in the notes in Joyce, Law of Nuisances, § 384, and 22 Am Jur 178, Explosions and Explosives, § 51. Also, see, 20 ALR2d 1406 V.

As previously stated, this is a case of first impression in this court. *Salmi v. Columbia & N. R. R. Co.,* 75 Or 200, 146 P 819, LRA 1915D 834, cited by plaintiffs, is not in point because the basis of liability there was negligence. There is a dictum in *Dibert v. Giebisch,* 74 Or 64, 69, 144 P 1184, to the effect that blasting stumps in a sparsely settled community does not neces-

sarily create a nuisance. *Amphitheaters, Inc. v. Portland Meadows,* 184 Or 336, 198 P2d 847, 5 ALR2d 690, cited by both parties, has only remote bearing. It involves the question whether light from the defendant's race track, reflected onto the plaintiff's outdoor moving picture screen, should be enjoined as a nuisance. Under the particular circumstances plaintiff's loss was held to be *damnum absque injuria.*

■ Our recent decision in *Brown v. Gessler,* 191 Or 503, 512, 230 P 2d 541, 23 ALR2d 815, definitely places this court on the side of the courts of this country which have adopted as law the rule of *Rylands v. Fletcher.* Justice Blackburn in 1 Exch 278 stated the rule as follows:

> "We think that the true rule of law is, that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff's default; or perhaps that the escape was the consequence of vis major, or the act of God; but as nothing of this sort exists here, it is unnecessary to inquire what excuse would be sufficient."

It requires very little extension of this doctrine to apply it to the facts of the present case. And there is slight difficulty in holding that one who engages in blasting operations which set in motion vibrations and concussions of the earth and air which reach to another's land—no matter how far distant—and shatter his dwelling, commits a trespass no less than one who accomplishes the same result by the propulsion of rocks or other material. *Parcell v. United States,* supra;

*Bluhm v. Blanck & Gargaro,* supra; 22 Am Jur 180, Explosions and Explosives, § 54. "Is not a concussion of the air, and jarring, breaking, and cracking the ground with such force as to wreck the buildings thereon, as much an invasion of the rights of the owner as the hurling of a missile thereon?" *Louden v. City of Cincinnati,* supra.

■ While the decided preponderance of judicial opinion supports the view that the rule of absolute liability, that is, liability without fault, applies in this class of cases, it is clear that the rule does not mean the same thing to all courts. Whether, as Judges Baldwin and O'Sullivan thought, the limitation placed around the rule by the majority in the Whitman Hotel Corporation case makes the liability less than absolute by introducing the element of negligence it is not important to determine. The important question is whether we should adopt a rule which imposes liability when it is shown, without more, that injury to a plaintiff's property was caused by blasting operations carried on by another; or a rule which conditions such liability by requiring the plaintiff to prove circumstances of the kind referred to in some of the cases—locality of the blasting and the like—, or by permitting the defendant to absolve himself by showing the nonexistence of such circumstances, leaving to a jury the determination of the ultimate question of "absolute liability". The latter view does not appeal to us as logical. But logic, we are told by eminent authority, is not "the life of the law". Basic to the problem is "an adjustment of conflicting interests", *Exner v. Sherman Power Const. Co.,* supra: of the right of the blaster, on the one hand, to pursue a lawful occupation and the right of an owner of land, on the other, to its peaceful enjoyment and

possession. Where damage is sustained by the latter through the nonculpable activities of the former, who should bear the loss—the man who caused it or a "third person", as Judge Hand says, "who has no relation to the explosion, other than that of injury"? Considering the ultrahazardous character of the activity, we find no reason for making a distinction between the right of the owner of a dwelling house which is damaged by a blast set off in open country 2000 feet distant from his house, and the right of an owner of a skyscraper in a large city damaged by a blast set off on adjoining property; or for distinguishing between a single blast which demolishes a house, and a series of blasts continued over a long period of time which crack the foundations of a house and cause it to settle. In either case the ensuing loss should be considered a cost of the blaster's business. The one who causes the injury must be held to engage in the dangerous activity at his peril "because it is impossible to predict with certainty the extent or severity of its consequences." Restatement, Torts, supra. "The right of all within the circle of danger should be equal", *Bradford Glycerine Co. v. Manufacturing Co.*, supra, irrespective of distance and the character of the locality where the blasting operation is carried on, and the "circle of danger" is determined by the event, not by judicial appraisal of "likelihood" (whether subjective or objective) that the particular damage complained of would result.

These conclusions, though they may not have the support of the majority of courts of this country, are, we think, consonant with the trend of present day judicial thinking and with modern concepts of justice.

It follows that the amended complaint states facts

sufficient to constitute a cause of action, the evidence was sufficient to take the case to the jury, and the granting of the motion for judgment of involuntary nonsuit was error.

The judgment is reversed and the cause remanded for further proceedings in conformity to this opinion.