Argued June 1, 1970, reversed and remanded March 10, 1971

RETER ET UX, *Appellants, v.* TALENT
IRRIGATION DISTRICT, *Respondent.*

482 P2d 170

*A. Allan Franzke*, Portland, argued the cause for appellants. With him on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, and Frohnmayer, Lowry & Deatherage, Medford.

*Thomas C. Howser*, Medford, argued the cause for respondent. With him on the brief were Brophy, Wilson & Duhaime, Medford.

Frank J. Van Dyke, Medford, filed briefs amici curiae. With him on the briefs were Van Dyke, DuBay & Robertson, Medford; George H. Proctor and Proctor & Pucket, Klamath Falls, on behalf of Klamath Drainage District and Shasta View Irrigation District; Arthur W. Schaupp, Klamath Falls, on behalf of Enterprise Irrigation District; Kenneth E. Shetterly and Hayter, Shetterly, Noble & Weiser, Dallas, on behalf of Monmouth-Dallas Irrigation District; and Thomas

142

F. Young and Banta, Silven & Young, Baker, on behalf of Burnt River Irrigation District.

Before O'CONNELL, Chief Justice, and SLOAN,[*] DENECKE, HOLMAN, HOWELL, SCHWAB and LANGTRY, Justices.

O'CONNELL, C. J.

This is an action to recover damages for injury to a pear orchard allegedly sustained when water seeping from defendant's irrigation canals caused a rise in the water table on plaintiff's land. The nature of the injuries alleged and the circumstances of the parties are essentially the same as those described in *Furrer v. Talent Irrigation District,* 258 Or 494, 466 P2d 605 (1970).

Water concededly seeped from defendant's canals onto plaintiff's property with defendant's knowledge. Plaintiff's complaint alleges three bases of recovery: (1) strict liability for the carrying on of an ultrahazardous activity; (2) intentional trespass, and (3) negligence. The trial judge refused to instruct on any theory other than negligence. The jury returned a verdict for defendant. Plaintiffs appeal.

■ The principal issue on this appeal is whether an action of trespass will lie where the defendant maintains an irrigation canal on his property with reason to know that water from that canal is seeping onto the plaintiff's land.[1]

---

[*] Sloan, J., resigned September 30, 1970.

[1] "(1) The words 'reason to know' are used throughout the Restatement of this Subject to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact

*Furrer* was brought on the theory that defendant was negligent. In discussing whether contributory negligence should have been allowed as a defense to the claim, we stated:

"In the present case there was evidence to establish that defendant's canals were the source of a substantial amount of water which found its way to plaintiff's land. There was also evidence that defendant knew or had reason to know that the water was seeping into plaintiff's land. We have, then, an intentional intrusion which, if all other factors are present, could constitute an interference with plaintiff's exclusive possession and give rise to an action of trespass. * * *

"Accepting the traditional law of trespass, the tort would be complete even though no actual harm resulted to plaintiff's land. The plaintiff's subsequent negligent conduct would not, in such case, vitiate defendant's liability but could, of course, reduce the plaintiff's recovery under the rule of avoidable consequences. The trial court's refusal to instruct on contributory negligence could be upheld on the foregoing analysis. 258 Or at 514, 515, 466 P2d at 614-15.

It is plain that the case at hand fits exactly within the description of trespass set forth in *Furrer*, and the jury should have been instructed on the theory of trespass as requested.

Defendant contends that under *Martin v. Reynolds Metals Co.*, 221 Or 86, 342 P2d 790 (1959), cert. den., 362 US 918, 80 S Ct 672, 4 L Ed2d 739 (1960), a balancing test was established to determine whether a particular invasion is to be denominated a trespass, and that this test should be applied here. Thus de-

---

in question exists, or that such person would govern his conduct upon the assumption that such fact exists." Restatement (Second) of Torts § 12, p. 19 (1965).

fendant would have us exclude trespass as a remedy in the present case because the social utility of its canal overbalances plaintiff's interest in being free from the intrusion upon his land through the seepage of water from defendant's canal.

Defendant misreads *Martin v. Reynolds Metals Co., supra*. The discussion of balancing interests in that case related to the problem of determining whether trespass should be applied in circumstances not falling within the traditional pattern of trespass. We do not have those circumstances here.

It is clear that the nature of the invasion in the present case (intrusion by the flow of water) always has been regarded as trespassory.[8] One who knowingly causes water to flow onto or beneath the land of another commits a trespass and is liable for damages.

Plaintiff also contends that defendant is liable on a theory of absolute liability based upon *Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868). If this theory were accepted, defendant would be liable for damages simply because it brought water upon its own land, even if it had no reason to believe water was escaping onto adjoining property. Liability under *Rylands v. Fletcher* is predicated on the principle that persons should be strictly liable for damages caused by activities of an unusual and especially hazardous nature. Recently, in *McLane v. Northwest Natural Gas,* 255

---

[8] Union Pacific R. R. Co. v. Vale Irrigation Dist., 253 F Supp 251, 258 (D. Or 1966); Levene v. City of Salem, 191 Or 182, 190, 229 P2d 255 (1951); Laurance v. Tucker, 160 Or 474, 479, 85 P2d 374 (1939).

Or 324, 467 P2d 635 (1970), we set forth the limits of the *Rylands* rule as it applies in this state:

> " *  *  * We have come to the conclusion that when an activity is extraordinary, exceptional, or unusual, considering the locality in which it is carried on; when there is a risk of grave harm from such abnormality; and when the risk cannot be eliminated by the exercise of reasonable care, the activity should be classed as abnormally dangerous."

■ The activity conducted by defendant here—the irrigation of orchard land in a naturally dry area—can hardly be called "exceptional, or unusual, considering the locality in which it is carried on." Moreover, the risk of serious harm created by the activity is minimal. The canals involved in this case are approximately 18 inches deep and four feet wide. They do not appear to create the risk of serious harm which courts have had in mind in imposing strict liability.[9]

■ Another issue raised on this appeal is the question of the applicable statute of limitations. Since we have determined that the cause of action could properly be laid in trespass, the six-year limitation period provided for in ORS 12.080 (3) for trespass to land is applicable. Thus the trial court was in error in refusing to instruct that plaintiffs were entitled to damages incurred during the six-year period preceding the time of filing suit.

■ Defendant maintains that ORS 12.080 (3) was

---

[9] See Note by William Hallmark, Strict Liability—Irrigation Districts and Rylands v. Fletcher in Oregon, 46 Or L Rev 239 (1967). A broader rule appears to have been applied in Brown v. Gessler, 191 Or 503, 230 P2d 541, 23 ALR2d 815 (1951) and in Union Pacific R. R. Co. v. Vale Irrigation Dist., *supra*. We find this extension of the rule unacceptable.

originally written with a very restrictive view of the definition of trespass in mind and should not be applied to cases falling outside of that definition. It is, of course, true that this court should not re-define the meaning of trespass and use it to avoid the legislative policy set forth in a statute relying upon the original definition.[4]

On the other hand, it is quite clear that distinctions used by courts to classify actions are often subject to modification. The genius of the common law is its flexibility—the ability to develop a consistent legal tradition in light of changing notions of legal relationships. When this court determined that injuries to land which were once too indirect to be trespasses would thereafter be treated as trespasses, it was applying a traditional category in a traditional way in light of modern developments. This re-definition of trespass was deemed necessary to avoid depriving an injured landowner of a remedy solely because the one causing injury had used an indirect, though clearly effective means to accomplish his trespass. The policy intended by the legislature in creating a special limitations period for trespasses to land is best fulfilled now by continuing to apply the statute to all injuries to land brought about by a substantial invading force. When the court interprets "trespass" under the common law, it necessarily interprets the term for the purposes of the legislative enactment.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

---

[4] This is the import of the cases cited by defendant, which simply hold that "trespass on the case" is not "trespass" in the traditional sense intended by the lawmakers who wrote the statute of limitations for trespass actions. See 15 ALR3d 1228 (1967).

HOWELL, J., dissenting.

I agree with that portion of the majority opinion which holds that the theory of absolute liability under *Rylands v. Fletcher* should not be applied in this case. However, I believe that the plaintiff's case was properly submitted to the jury on the theory of negligence and that defendant's liability should not be predicated on intentional trespass.

The majority opinion states that intrusion by the flow of water always has been regarded as trespassory, citing *Union Pacific R.R. Co. v. Vale Irrigation Dist.*, 253 F Supp 251, 258 (D Or 1966); *Levene et ux v. City of Salem*, 191 Or 182, 190, 229 P2d 255 (1951); *Laurance et al v. Tucker*, 160 Or 474, 479, 85 P2d 374 (1939).

In *Union Pacific* the canal was built on a steep hillside in an area known to be unstable at the time of construction, resulting in "large and destructive quantities" of water escaping from the canal.

It is my understanding that there was nothing unusual about the topography of the land or the construction of the irrigation canal in this case.

In *Levene*, while the court stated that the collection and emptying of water on another's land constitutes a trespass, the court found liability on the basis of nuisance.

In *Laurance*, the defendant argued that she had acquired by adverse possession an easement over plaintiff's property to drain the overflow from a septic tank. Apparently she contended also that the easement benefited the plaintiff. The court mentioned that a trespass cannot be justified by showing a benefit to the plaintiff's land; however, the primary issue was whether defendant had acquired an easement

over plaintiff's land by adverse possession, and the case was remanded for disposition of that issue.

In my opinion, the result of the majority opinion is to impose absolute liability upon a ditch company for all seepage from an irrigation ditch, whether the seepage is from natural causes or the burrowing of gophers or other animals.

I believe that the proper rule to be applied to this and other similar cases involving seepage is that the operator of the ditch is liable only on a showing of negligence. *Taylor v. Farmers' Irrigation Co.*, 82 Or 701, 162 P 973 (1917), and *Patterson v. Horsefly Irrigation District*, 157 Or 1, 69 P2d 282, 70 P2d 36 (1937).