**David W. SMITH, Appellant,**

v.

**HERBERT MALARKEY ROOFING COMPANY, an Oregon Corporation, Appellee.**

No. 74–2736.

United States Court of Appeals, Ninth Circuit.

July 2, 1976.

Peter A. Schwabe, Jr. (argued), of Marshall & Schwabe, Portland, Or., for appellant.

J. Terrence Bittner (argued), of McMenamin, Jones, Joseph & Lang, Portland, Or., for appellee.

OPINION

Before MOORE,* KILKENNY and SNEED, Circuit Judges.

MOORE, Circuit Judge:

In the early pre-dawn morning (approximately 4:00 a. m.) of June 18, 1972, the windshield of the automobile which appellant David W. Smith was driving along North Columbia Boulevard in Portland, suddenly shattered causing a splinter of glass to enter Smith's right eye, which resulted in permanent impairment of sight in that eye. Investigation proved that the cause of this unfortunate mishap was that Smith's car had struck an airborne mallard duck or conversely that the mallard had struck Smith's car. The rationale for this conclusion was the finding of the body of a deceased mallard at the scene of the accident and duck feathers and other parts inside Smith's car. The question of negligence, or the degree thereof, attributable to the only participants involved in the accident, namely, the mallard and Smith, is not before us.

The scene of the accident was that portion of North Columbia somewhat adjacent to the plant of defendant-appellee, Malarkey Roofing Company (Malarkey). Since

---

* Honorable Leonard P. Moore, Senior United States Circuit Judge, Second Circuit Court of Appeals, sitting by designation.

Smith is a citizen of Washington, Malarkey is an Oregon corporation and the amount in controversy exceeds $10,000, the federal courts have been chosen as the forum in which Smith seeks recoupment for his injury.

His complaint, a model of brevity, contains two counts: (1) negligent maintenance of a duck pond on the Malarkey property, near North Columbia, a public thoroughfare; and (2) creating thereby an unreasonably dangerous condition to the public using that thoroughfare.

After several unsuccessful attempts by Malarkey to dispose of the matter by motions to dismiss for failure to state a claim, for partial summary judgment and for summary judgment, the case came on for trial before the Court without a jury. Subsequent to the trial, the Court delivered its opinion[1] finding for the defendant.

The Court refused to conclude that the maintenance of the pond by Malarkey was an "ultra-hazardous activity" and referred to parks and places, public and private, in the vicinity where waterfowl might congregate. As to negligence, the Court held that there was "no showing that the defendant knew, or reasonably ought to have known", that such a pond "was likely to lead to harm of the general character involved in this case" or that the fact that dead ducks had been found on the highway was notice to Malarkey that ducks were a hazard to motorists. In short, the Court could not find "the vital element of foreseeability" in relating the Malarkey pond to the accident. Accordingly, judgment was issued dismissing the complaint.

Plaintiff called as witnesses persons who, while driving along North Columbia, near the Malarkey property, had seen dead ducks at the side of the road, ducks walking across the road, ducks sitting in the middle of the road and ducks flying at low levels across the road. In one instance, the front of a motorist's car had struck a duck, with unfortunate consequences for the duck. If ducks chose to walk across a well-traveled public highway used by motorists instead of using less dangerous aerial routes better suited to flying ducks, they might well have subjected themselves to such an eventuality. The roadside dead ducks certainly indicated that motorists were a hazard to road crossing ducks, but by no means that such ducks would be likely to be the cause of the type of injury incurred here. Furthermore, even if it had been, one would have expected the record to have been replete with incidents of ducks crashing into motorists with notice thereof to Malarkey.

Appellant also adverts to the Malarkey habit of putting food and grit around the pond about 4 o'clock in the afternoon and argues that even if the pond itself was not the well-spring of the dead duck's conduct, Malarkey was still culpable because of these other lures with which it seduced the birds to come to the pond. However, once again, even assuming appellant's premise that mallards find food and grit irresistible, there is no way of knowing whether the Malarkey provender was the aim of this duck's low trajectory. And there is no evidence which would indicate that the duck was in the area for a midnight snack twelve hours ahead of schedule or that the pond was the duck's intended destination. Further speculation along these lines would be pointless. But even if this feeding practice caused an undue assemblage to partake of Malarkey largesse, it would not account for the unexpected flight of a single duck in pre-dawn darkness. Furthermore, the pond was 100 yards from the highway, surrounded by a seven foot fence with railroad tracks between highway and pond.

The area is a game reserve and should be naturally attractive and conducive to migratory birds. In addition to the parks and open areas previously mentioned, there is somewhat nearby the Columbia River, the Columbia River Slough and green fields where ducks have been observed to congregate and feed.

1. The oral opinion dated March 14, 1974 has been transcribed as an opinion, filed as findings of fact, and conclusions of law and order pursuant to Rule 52, and is to be found at pages 149–155 of the record on appeal.

The waters of the Malarkey pond might well be said to be alluring to ducks but by no stretch of the imagination is the maintenance of an artificial pond an ultrahazardous activity or a foreseeable cause of an injury of the unusual nature suffered here. The activity is neither abnormal, unusual, or especially dangerous—see, *Reter v. Talent Irrigation District,* 258 Or. 140, 482 P.2d 170 (1971)—at least not in an area which is already rife with waterfowl and water.

Appellant says "Nothing short of removal of the pond could eliminate the risk" (Appellant's Brief, p. 6). But query, would elimination of Malarkey's rather minute pond remove the risk? Complete protection of motorists might well require the elimination of the game refuge, the surrounding green fields, the Columbia River Slough and possibly the diversion of the Columbia and Willamette Rivers as well, if flying ducks were to be recognized as a constant peril to motorists.

The parties here both have proceeded in a well-accepted format of argumentation, namely, an almost biological analysis of cases and the Torts Restatement. They have dissected and then put under the microscope each and every element stated therein. Tort cases, however, so much dependent on their own particular facts, are not suited to such treatment. The Trial Court here heard and reviewed the evidence presented and then, in finding for the defendant, held that the maintenance of the Malarkey duck pond was not an "ultra-hazardous" activity and that the type of accident here suffered was not foreseeable. The law and the facts support this conclusion.[2]

Judgment affirmed.

---

**2.** There is an indication in the record that the Judge and counsel planned to visit the Malarkey property on the afternoon the trial ended, thus giving the Court and counsel the advantage of visual inspection.